STATE of Missouri, Respondent,

v.

Richard PAGE, Appellant.

No. 39959.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 3, 1979.

James F. Booth, Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., Gordon L. Ankney, St. Louis, for respondent.

REINHARD, Presiding Judge.

Defendant appeals his conviction by a jury of the offense of assault with intent to maim with malice aforethought. The court sentenced him under the Second Offender Act to 12 years imprisonment.

The evidence shows that at the time of the assault the defendant, Richard Page, was incarcerated in the St. Louis City Medium Security Institution, commonly known as the City Workhouse. Captain Frank Bobo, a security officer at the Workhouse, was on duty on August 23, 1976. In the early morning of that day he heard a disturbance at the door leading from the hallway in which he was standing to the dormitory which contained 26 one-man cells. Both the defendant and Mark Moore inhabited cells in that dormitory. Captain Bobo saw Moore come through the door bleeding around the neck, followed closely by Page. Moore was taken to Homer G. Phillips Hospital where it was determined that he had suffered multiple wounds to the chest and neck including a 98% transection of the left internal jugular vein. Defendant Page was found to have no injuries.

While investigating the incident, Captain Bobo went to Defendant's cell, where he found a pool of blood 6 to 12 inches in diameter and pieces of glass scattered on the floor. All of the shards of glass were from the light fixture which had been in Page's cell. Captain Bobo testified that the cells are inspected every day and that a broken fixture would not be left in a cell. One of the pieces of glass had tape wrapped around the wide, blunt end, the other end being pointed. There was blood on this piece of glass. A criminalist testified that he found no blood on any of the other pieces of glass.

Following the assault, defendant was questioned by Officer Aldophus Hardy of the St. Louis City Police Department. After the officer informed Page of his constitutional rights, the defendant admitted that he stabbed Moore with a piece of glass because of a dispute over Moore's watch. According to this admission, Moore had loaned defendant the watch and later had taken it from defendant's cell. Afterwards Moore had demanded the watch from defendant Page and the fight ensued.

At trial the defendant denied giving Officer Hardy a statement and told a slightly different or elaborated version of the facts. The defendant testified that before the incident he had seen Moore at the Workhouse commissary where Moore had asked the defendant if he intended to pay for Moore's watch, which Moore said had been stolen while in defendant's possession. The defendant refused to pay for it, believing that the watch had been returned to Moore. After leaving the commissary defendant entered his cell with an inmate named Ingram. Ten minutes later Moore pushed open the door to defendant's cell, entered and hit Page on the head with a hard object. The defendant responded by wrestling Moore to the floor, knocking some glass off a table in the process. Page grabbed the closest thing, a piece of the broken glass, and started swinging to get Moore off of him. He did not realize that he had cut Moore. The fight was then broken up by other inmates at which time Page ran to the door of the cell dormitory.

The State did not call Moore as a witness.

First, defendant contends that the trial court erred in overruling his motion for judgment of acquittal. The trial court should have sustained the motion, defendant argues, because the case was not submissible to the jury in that the state had failed to establish specific intent to maim.

In reviewing the sufficiency of the evidence, we must view it in the light most favorable to the state and give the state the benefit of all reasonable inferences. *State v. Wiley*, 522 S.W.2d 281, 292 (Mo. banc 1975).

It is well settled that the intent required in a case such as this can be deter-

mined by circumstantial evidence. *State v. Gannaway*, 313 S.W.2d 653, 656 (Mo.1958). "In fact, intent is generally not subject to direct proof and is therefore necessarily established by circumstantial evidence." *State v. Mills*, 495 S.W.2d 715, 716–717 (Mo. App.1973). It is equally well established that the words "to maim" mean no more than the infliction of some great or serious bodily injury. *State v. Foster*, 281 Mo. 618, 220 S.W. 958, 960 (1920). In ascertaining the existence of the requisite intent, the jury could consider the nature of the weapon used, the manner of its use, the results of its use, and all related circumstances giving rise to the incident out of which the charge arose. *State v. Woody*, 406 S.W.2d 659, 661–662 (Mo.1966).

■ The state's evidence showed that Mark Moore was bleeding from the neck and that defendant followed him as Moore left the cell dormitory. A pool of blood 6 to 12 inches in diameter was found on the floor of defendant's cell with shards of glass nearby. One piece of glass, with blood on it, had been taped. Moore suffered from serious wounds to the chest and neck, including a 98% transection of the left internal jugular vein. Defendant admitted to a police officer that he had stabbed Moore with a piece of glass in a dispute over the latter's watch. Clearly, the jury could reasonably infer from these facts that defendant intended to inflict serious bodily harm on Moore.

The defendant also claims that the court erred in submitting the case to the jury because the state failed to prove beyond a reasonable doubt that defendant did not act in lawful self-defense.

■ Once self-defense is properly raised, the burden of proof is on the state to prove the defendant did not act in justifiable self-defense. *State v. Tindall*, 496 S.W.2d 267, 271 (Mo.App.1973). However, this does not mean that the state is required to come forward with additional evidence after the defendant has produced evidence of self-defense. *State v. Willett*, 539 S.W.2d 774, 778 (Mo.App.1976). In *State v. Curby*, 553 S.W.2d 566 at page 568 (Mo.App.1977), we said:

Rarely will the defense of another [self-defense] be declared as a matter of law and taken from the jury. This would occur as a rule only when the state's undisputed evidence proves the defense [citation omitted] . . . . Only when all the evidence clearly and undisputedly points to defense of another [self-defense] is the defendant entitled to a directed verdict. Where the evidence is conflicting or of such a character that different inferences might reasonably be drawn therefrom, it is generally a question of fact for the jury to determine whether the accused acted in defense of another [self-defense] [citations omitted].

■ We cannot declare that the evidence here establishes self-defense as a matter of law. The only evidence of self-defense was the defendant's own testimony. The evidence is such that the jury could find the defendant's testimony inconsistent with the evidence presented by the state. The fact that the glass had been prepared beforehand with tape wrapped around it as a handle, the number and severity of the victim's wounds, the defendant's statement to Officer Hardy, which made no mention of self-defense, and the fact defendant was apparently unharmed after the incident all raise inferences that are contrary to the defendant's testimony.

Furthermore, we find no merit in defendant's contention that the trial court erred in admitting into evidence his statement to Officer Hardy and the pieces of glass found in his cell, because at the time of their admission evidence of the corpus delicti had not been established.

■ Evidence of the corpus delicti need not have preceded the admission of defendant's statement, as long as the essential elements of the case were proved by the end of the trial. *State v. Deyo*, 358 S.W.2d 816, 819 (Mo.1962); *State v. Easley*, 515 S.W.2d 600, 602 (Mo.App.1974). In establishing the corpus delicti, two elements must be proved: injury and criminal agency causing the injury. The rule in this state

has long been that *full* proof of the corpus delicti, independent of a confession, is not required. *State v. Skibiski*, 245 Mo. 459, 463, 150 S.W. 1038, 1039 (1912). If there is independent evidence, direct or circumstantial, which corroborates the defendant's admission, then both may be considered in determining whether the corpus delicti has been sufficiently established. *State v. Kollenborn*, 304 S.W.2d 855, 858 (Mo. banc 1957). An examination of the evidence previously discussed in this opinion clearly shows that the corpus delicti was established by the state's evidence when considered with defendant's statements. For the same reasons, we reject defendant's contention that the pieces of glass were improperly admitted into evidence.

Defendant finally contends that:

Statements made by the State's attorney in his closing argument that the defendant could have subpoenaed Mark Moore to testify were prejudicial and their effect was such as to shift the burden of proof from the State to the Defendant. That notwithstanding the fact that the court sustained defense counsel's motion to said statements and instructed the jury to disregard such statements, their impact was such as to inur [sic] to the great prejudice of the Defendant and thus denied him a fair trial.

The basis of this allegation is contained in the following exchange between the court and the respective attorneys:

MR. ANKNEY: You can speculate all day about what Mark Moore would have said, why the State didn't bring him down but I vouch for the credibility of the witnesses I put on the stand and you also know that he has the right to subpoena anybody he wants to, so you can speculate all you want—

MR. KIRKSEY: Well, your Honor, I object to that. Now counsel is attempting to shift the burden of proof to the defendant. I think that is objectionable.

THE COURT: I'll sustain the objection.

MR. KIRKSEY: Ask you to instruct the jury to disregard it.

THE COURT: Jury be instructed to disregard that so far as Mark Moore is concerned.

MR. ANKNEY: He has the right to subpoena witnesses.

MR. KIRKSEY: Well, your Honor—

MR. ANKNEY: That's true, he has the right to subpoena—

MR. KIRKSEY: He's shifting the burden of proof, your Honor.

THE COURT: Well, every individual has the right to subpoena witnesses but whether or not it's their duty to do so, that's something else, and the burden of proof in a criminal case never shifts, it always remains on the State.

Let's proceed.

MR. KIRKSEY: Thank you, your Honor.

Because the defendant neither asked for a mistrial nor assigned the failure to declare a mistrial as error in his motion for a new trial, the point was not properly presented for review. Therefore, we will consider this contention under the precepts of Rule 27.20(c), which provides that plain errors not properly presented may be considered by the court, "when the court deems that manifest injustice or miscarriage of justice has resulted therefrom."

Reviewing the record, we find that the defendant was given all the relief he requested. The court sustained the objection, instructed the jury to disregard the prosecuting attorney's statement, and remarked that the burden of proof always remains on the state. The granting of a mistrial is a drastic remedy which should be employed when no other relief can remove the prejudice of improper argument. *State v. Goff*, 490 S.W.2d 88, 90 (Mo.1973). This is simply not the case here. An examination of the comment by the prosecuting attorney and the response by the court reveals no prejudice to the defendant. Hence, we find no "manifest injustice or miscarriage of justice" necessitating application of Rule 27.20(c).

Affirmed.

GUNN, and CRIST, JJ., concur.