**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Robert ELLIS, Defendant-Appellant.**

**No. WD 32998.**

Missouri Court of Appeals,
Western District.

Sept. 7, 1982.

William Barvick, Jefferson City, for defendant-appellant.

John Ashcroft, Atty. Gen., and Melinda Corbin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before KENNEDY, P. J., and WASSER-STROM and MANFORD, JJ.

KENNEDY, Presiding Judge.

Defendant Robert Ellis, upon a jury trial in which he and his co-defendant Tunstall were jointly tried, was convicted of first-degree assault, § 565.050, RSMo 1978. In accordance with the verdict of the jury he was sentenced to 12 years' imprisonment.

He appeals to this court, alleging that the trial court erred in failing to instruct upon second-degree assault, § 565.060, RSMo 1978. We agree with the appellant in this contention and reverse the judgment. He raises a second point which we deny, but which we rule upon for the guidance of court and counsel upon retrial.

Inmate Dennis Binion of the Missouri State Penitentiary at Jefferson City, at about 7:40 o'clock a. m. on May 20, 1980, was seen by witness Pendleton hurrying out of the eating area, blood on the back of his shirt. Witness Pendleton, a cook employed at the prison, went back to the place where Binion had been eating. He found blood on the wall, the floor and the table. In a garbage can in the area where the pots and pans were washed, he found a length of galvanized pipe. The pipe was introduced in evidence at the trial but has not been deposited here. We do not know its dimensions.

Guard McKinney found Binion "hanging on the control center gate", bleeding from the back of his head. McKinney took Binion to the hospital. He was found to have nine wounds, seven of them puncture wounds and two of them lacerations. The puncture wounds were superficial, as was a half-inch laceration on the elbow. They were treated by cleaning with Physohex solution, a strong soap, and with antibiotic ointment. One of the wounds was a laceration of the scalp. It was one and a half inches in length and was closed by suturing.

Defendant Robert Ellis and one Willie Tunstall, also inmates of the prison, were interrogated and gave statements to officers of the penitentiary. They said that Binion had been "pressing" Tunstall to engage in homosexual activity. The day before the assault Ellis and Tunstall had secured an ice pick type of weapon, 10 or 12 inches long with a taped handle, and a length of pipe, and had secreted them in the kitchen. On the morning of the assault, as Binion was eating breakfast, the two attacked him from behind. Tunstall hit him on the head with the pipe, while defendant Ellis wielded the knife.

On the trial of the case, defendant Ellis testified that Binion had been making homosexual advances to him as well as to Tunstall. Asked if he was trying to kill Binion, defendant replied: " . . . I couldn't say yes to that, and I wouldn't say no to that. I wouldn't have been mad if I had killed him. I felt he was wrong. . . . (I)t was more or less to let him know, you know, to quit harassing. . . . To let him know to back off of us".

Tunstall's own testimony on the trial was that Ellis attacked Binion and when Binion began to overpower Ellis, that he, Tunstall, hit him with the pipe. He acknowledged that he had placed the pipe in the kitchen area on the day before. He explained his purpose in doing so as being to "back up" Ellis, and later said it was for the purpose of self-defense. He testified that he had withdrawn from the plan to attack Binion, but he came to Ellis's aid to prevent Ellis's being hurt or killed when he began to get the worst of it.

Binion did not testify.

Defendants Ellis and Tunstall were jointly charged and jointly tried.

1. *Omission of second-degree assault instruction; "physical injury" (second-degree assault) as opposed to "serious physical injury" (first-degree assault).*

■ The attorney general says that the appellant's "Point Relied On" is insufficient to comply with Rule 84.04(d), in that it does not state wherein and why the actions or rulings of the trial court are claimed to be erroneous. We find appellant's point to be sufficiently stated and we review the point upon its merits.

Defendant's contention that the court erred in submitting first-degree assault only, and in failing to instruct upon second-

degree assault, is based upon two arguments. First, he claims that it is a permissible construction of the evidence that the injury caused or attempted was a "physical injury" rather than a "*serious* physical injury". If the evidence does permit such construction, the defendant would be entitled to a second-degree assault instruction. Section 565.060, RSMo 1978, which defines second-degree assault, says:

> 1. A person commits the crime of assault in the second degree if:
>
> (1) He knowingly causes or attempts to cause physical injury to another person by means of a deadly weapon or dangerous instrument. . . .

On the other hand, if the evidence justified only the "*serious* physical injury" submission, then first-degree assault was the only offense which required submission, § 565.050, RSMo 1978, and the court did not err in omitting the second-degree assault instruction.

The terms "physical injury" and "serious physical injury" are defined by § 556.061, RSMo 1978. Subsection 24 defines "serious physical injury" as one that "creates a substantial risk of death". A mere "physical injury" means "physical pain, illness, or any impairment of physical condition", subsection 19. It comes down to the question, then, whether the assault described in our statement of facts, viewed most favorably to the second-degree assault submission, *State v. Smith,* 518 S.W.2d 665, 669 (Mo. App.1975), *necessarily* created a substantial risk of death . . . or whether the jury might reasonably have regarded it as a mere "physical injury" not creating a "substantial risk of death".

The term "substantial risk of death" is not defined in the statute. It is one of those terms which has already been reduced to its lowest common denominator. A "substantial risk" is less than a likelihood or a probability. It is only a "risk". The modifier "substantial" eliminates those injuries which might in some instances cause death, yet the risk thereof is less than substantial.

■ We cannot say as a matter of law that the evidence in this case showed only a "serious physical injury", that is, one creating a "substantial risk of death". If we were fact finders we might so find the facts. But we are not fact finders and we cannot say that reasonable men might not find that the injury caused or attempted was merely a "physical injury", creating no "substantial risk of death". The medical evidence, submitted by the state, does not settle the question. Dr. Baker said of the wounds, "I think they possibly could (cause death or serious physical injury), especially the trauma to the head could have."

■ Neither do the use of the ice pick weapon and the length of pipe necessarily indicate a purpose to cause serious physical injury. The second-degree assault statute, § 565.060.1, which we have quoted above, includes among the definitions of the crime a knowing causing or a knowing attempt to cause (mere) physical injury "by means of a deadly weapon or dangerous instrument". It contemplates that one may make a second-degree assault, involving a mere "physical injury" with a lethal weapon.[1]

■ As a general proposition, a trial court should resolve all doubts upon the evidence in favor of instructing on the lower degree of the crime, leaving it to the jury

---

1. Comment on § 211.1, Assault, of the Model Penal Code says with respect to attempting or causing "bodily injury" (as opposed to "serious bodily injury") with a deadly weapon:

> These are assaults with a deadly weapon where it does not appear that there was intent to do serious bodily harm or the type of recklessness referred to in paragraph (a). It would be unnecessarily harsh, for example, to subject a person to ten years maximum imprisonment for a mere attempt to inflict minor injury with a knife or club. In particular circumstances the use of such implements would often support an inference of purpose or recklessness leading to a second degree conviction; and use of a firearm to shoot at the victim would almost certainly lead to that conclusion. But a judgment as to the seriousness of the actor's ill-will should not follow automatically from classification of the implement he employs, when the imposition of very heavy sentences is the issue.

Model Penal Code § 211.1 note on status of section (Proposed Official Draft 1962).

to decide which of two or more grades of an offense, if any, the defendant is guilty. 23A C.J.S., *Criminal Law,* § 1288 (1961). Sometimes as in the present case a fine line separates the higher from the lower degree of the offense. The defendant is not prejudiced by the submission of the lower degree of the offense, though a finely milled analysis of the evidence might lead to the conclusion that it supported the submission only of the higher degree of the offense. *State v. Cox,* 508 S.W.2d 716, 723–724 (Mo.App. 1974).[2]

A very similar question was before the Supreme Court of Wisconsin in *Flores v. State,* 76 Wis.2d 50, 250 N.W.2d 720. The weapon used by the defendant upon the victim in that case was a pool cue stick. The victim lost a natural tooth, lost another tooth, had a cut which required 30 stitches, was unconscious for more than an hour, was in intensive care two and a half days and in the hospital nine days. The question was whether the jury was correctly instructed only upon aggravated battery for having caused great bodily harm, or whether the defendant was entitled to an instruction upon the lesser-included offense of battery, a crime made out by proof of mere "bodily harm".[3] Justice Hansen, in language which is quite appropriate to the case we are dealing with, wrote:

If the issue now before us were whether a jury could have found the defendant guilty of aggravated battery for having caused "serious bodily injury," we would unhesitatingly uphold the conviction. However we find the *La Barge* [*v. State*] [74 Wis.2d 327, 246 N.W.2d 794 (1976)] holding as strongly suggestive that in the present case a jury question was presented as to whether "bodily harm" or "great bodily harm" was caused by the injuries inflicted. The lesser-included offense of battery should have been submitted to the finder of fact—here the jury.

We do not hold that there is some near-automatic right to have the lesser-included offense of battery submitted to the jury whenever the crime charged is that of aggravated battery. We do note that where that is the issue raised it is not easy as a matter of law to draw the line of demarcation between "great bodily harm," meaning "serious injury," and "bodily harm," meaning "physical injury" or "impairment of physical condition."

\*  \*  \*  \*  \*  \*

However in many cases the situation will fall into a twilight zone. That is, whether the resultant injury constituted "bodily harm" or "great bodily harm" becomes as it was in *La Barge* an issue of fact for the jury to resolve. Where that

---

**2.** Until *State v. Olson,* infra, the defendant did not have to request a lesser-included offense instruction. If the evidence warranted such an instruction, the trial court was required to give it and failure to do so was error. § 546.070(4), RSMo 1978; Rule 28.02(e); *State v. King,* 588 S.W.2d 147, 151–152 (Mo.App.1979). Now, the Supreme Court, in *State v. Olson,* 636 S.W.2d 318, 322–323 (Mo. banc 1982), has decided that a defendant must request the lesser-included offense instruction (except in homicide cases) in order to complain on appeal for failure to give such instruction. We take it, however, that this procedural change has prospective application only and is therefore inapplicable here. *State v. Walker,* 616 S.W.2d 48, 49 (Mo. banc 1981), transferred to 616 S.W.2d 89 (Mo. App.1981); *State v. Shafer,* 609 S.W.2d 153, 157 (Mo. banc 1980); *Barker v. St. Louis County,* 340 Mo. 986, 104 S.W.2d 371, 377 (Mo. 1937). See also *Keltner v. Keltner,* 589 S.W.2d 235, 239 (Mo. banc 1979) (generally undesirable to give retroactive effect to overruling decisions except under the most compelling cir-

cumstances); *Rudolph v. Wagner Electric Corp.,* 586 F.2d 90, 92 (8th Cir. 1978), cert. denied, 441 U.S. 924, 99 S.Ct. 2033, 60 L.Ed.2d 397 (1979). (Factors to determine if retroactive application is warranted: whether question was one of first impression or clearly foreshadowed; whether the purpose of the rule will be aided or retarded by retroactivity; whether any inequities will result from retroactivity).

**3.** That phrase "great bodily harm" was defined by the Wisconsin statute to mean: " . . . bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss of impairment of the function of any bodily injury or organ or other *serious bodily injury.*" (Emphasis supplied.) "Bodily harm" was defined by statute to mean " . . . physical pain or injury, illness, or any impairment of physical condition." *Flores v. State,* 250 N.W.2d at 722.

either-or situation is present, a defendant's request for submission of battery as a lesser-included offense is to be granted, not denied.

250 N.W.2d at 724.

2. *"Extreme emotional disturbance" of defendant as requiring second-degree assault submission.*

■ Defendant argues that a second aspect of the evidence required a submission of the second-degree assault instruction. That is that the defendant was acting "under the influence of extreme emotional disturbance for which there is a reasonable explanation or excuse". § 565.060.1(3)(a), RSMo 1978. Such emotional disturbance may be shown in mitigation, not in justification, of the offense and if present it reduces a first-degree assault to second-degree assault. Defendant Ellis claims that he was entitled to have submitted to the jury the extreme emotional disturbance hypothesis.

The new criminal code introduces the "extreme emotional disturbance" concept into our law, a concept unknown to the common law. It has not been defined in any of our cases. The language originates in the Model Penal Code of the American Law Institute, relating to the grades of homicide. It contains the following comment:

> Sec. 210.3 of the Model Code continues a modified and substantially enlarged version of the rule of provocation. Subsection (1)(b) punishes as manslaughter "homicide which would otherwise be murder (if it) is committed under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse."
>
> ... (I)t casts the issue in phrases that have no common-law antecedents and hence no accumulated doctrinal content. Where there is evidence of extreme mental or emotional disturbance, it is for the trier of fact to decide, in light of all the circumstances of the case, whether there exists a reasonable explanation or excuse for the actor's mental condition. This issue cannot be resolved successfully by

categorization of conduct. It must be confronted directly on the facts of each case. By restating the ultimate inquiry, Subsection (1)(b) avoids the strictures of early precedents and puts the issue in the terms in which it should be considered. This development reflects the trend of many modern decisions to abandon preconceived notions of what constitutes adequate provocation and to submit that question to the jury's deliberation.

Model Penal Code and Commentaries, § 210.3. Commentary at 60–61 (1980).

The instructions which have been formulated to submit this issue to the jury, MAI–CR2d 19.02 and 19.03, carry out the idea that the issue in a proper case is to be submitted to the jury in broad general terms rather than upon a hypothesization of the operative facts.

■ However, there is in this case a complete absence of any evidence that either Ellis or Tunstall was acting under the influence of "extreme emotional disturbance". The attack upon Binion was calculated. Preparation had been made the day before by secreting the weapons in the area where the victim would be found. In his brief in this court, Ellis attempts to show his extreme emotional disturbance by his fear of homosexual rape. However, there is no evidence of any danger of homosexual rape. The most that the evidence shows on that score is that Binion was attempting to persuade Tunstall and Ellis to engage in homosexual acts with him, and that his advances had become annoying to them. Appellant points out that Binion was a much larger and stronger man, but, once again, there was no threat of an assault upon Ellis or Tunstall. All the evidence shows that the assault was coolly and deliberately planned and executed, and that neither Ellis nor Tunstall was in anything approaching a state of "extreme emotional disturbance".

3. *Admitting confession into evidence before proof of corpus delicti.*

■ Another point of appellant's will be noted for the guidance of court and counsel on another trial. The appellant complains

that the trial court erred in admitting into evidence his confession to prison officers before the state had proven the corpus delicti of the offense.

Missouri courts have long held that, as long as the essential elements of the crime are proved by the end of the trial, "it is not essential that independent proof of the corpus delicti come first in the order of proof". *State v. Anderson,* 384 S.W.2d 591, 605 (Mo. banc 1964). See also *State v. Madison,* 459 S.W.2d 291, 293 (Mo.1970); *State v. Deyo,* 358 S.W.2d 816, 819 (Mo.1962); *State v. Page,* 580 S.W.2d 315, 318–319 (Mo.App. 1979); *State v. Easley,* 515 S.W.2d 600, 602 (Mo.App.1974).

In this case, the independent evidence corroborated the defendant's admission and considered together, both sufficiently established the corpus delicti. *State v. Page,* 580 S.W.2d at 319. Defendant's point is denied.

The conviction is reversed and the case is remanded for a new trial.

All concur.