**STATE of Missouri, Respondent,**

v.

**Ruben WILLIAMS, Appellant.**

No. 47781.

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 25, 1986.

Motion for Rehearing and/or Transfer
Denied March 25, 1986.

Application to Transfer Denied
May 13, 1986.

John M. Walsh, Beth S. Ferguson, St. Louis, for appellant.

John M. Morris, III, Atty. Gen., Kristie L. Green, Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Defendant appeals from his conviction on one count of first degree robbery, § 569.-020 RSMo 1978, for which he was sentenced to fifteen years imprisonment. On appeal, defendant argues that the trial court erred in: (1) denying defendant's motion to exclude the victim's identification testimony or to dismiss the case because the state could not produce a line-up photograph; (2) refusing to submit a jury instruction on a lesser included offense; and (3) admitting evidence of a fingerprint comparison that denied defendant's sixth amendment right of confrontation. Finding each of these arguments without merit, we affirm.

At trial, the victim testified that on March 23, 1982, at approximately 11:15 p.m., she noticed defendant standing behind her in a line at a service station. Upon leaving the station, the victim drove a few blocks to her home and parked on the street next to a lighted streetlight. While gathering her belongings in the front seat of the car, the victim turned and saw a man standing next to the driver's side of the car. The man held a gun pointed at the victim. The gunman told the victim that he intended to shoot her, whereupon she locked the door on the driver's side and crawled out of the door on the passenger's side. The victim then ran to a neighbor's porch, leaving her purse and bag behind in the car. From the porch the victim saw another man, whom she later identified as defendant, approach the car and remove her purse and bag from the front seat. The two men then left the scene, and the victim notified the police.

About three days later, the victim viewed a line-up at the University City Police Department. She positively identified the gunman at the line-up, and further stated that she thought one of the other persons in the line-up looked like the man who took her purse and bag. Defendant was not one of the persons in that line-up.

A few days later, the victim viewed another line-up, this one including the defendant. At that line-up, the victim positively identified defendant as the person who took her purse and bag. She had the line-up repeated, and again identified defendant as the person who had robbed her.

In his first allegation of error, defendant alleges that the trial court erred in denying defendant's motion to exclude the victim's identification testimony, or, in the alternative, to dismiss the case against defendant. In support of this point, defendant argues that the state failed to disclose a police photograph taken of the first line-up viewed by the victim. The photograph was apparently destroyed prior to trial when the prosecuting attorney's office sent a letter to the University City Police Department indicating that the case against defendant's co-defendant had been closed. Defendant conceded at trial that the photograph's destruction resulted from a "bureaucratic mistake" rather than any "deliberate wrongdoing" on the part of the state. Defendant nevertheless argues that the photograph's destruction caused substantial prejudice to defendant because the photograph could have been used on cross-examination to impeach the victim's identification testimony.[1]

■ Defendant argues that the controlling precedent is *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), wherein the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87, 83 S.Ct. at 1196–1197. In *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Court further explained the materiality requirement:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

*Id.* at 112–13, 96 S.Ct. at 2401–02. The Missouri courts have thus held that the materiality of suppressed evidence is determined by the nature of the charge, the evidence presented by the prosecution, and the effect the undisclosed evidence would likely have had on the outcome of the trial. *State v. Wade*, 635 S.W.2d 51, 54 (Mo.App. 1982). Evidence may be material, however, even if it "does no more than impeach the credibility of a witness whose testimony prejudiced the defense." *State v. Dayton*, 535 S.W.2d 469, 477 (Mo.App.1976).

■ In the instant case, assuming *arguendo* that the destroyed photograph was material to defendant's conviction, defendant nevertheless failed to properly preserve this issue for appellate review. Although defendant made a pre-trial motion to dismiss or, in the alternative, to exclude the

---

1. In his brief to this court, defendant explains: A photograph of the line-up would have enabled defense counsel to compare the physical characteristics of [defendant] with those [of the] men participating in the [first] line-up. [The victim's] testimony would certainly be discredited if none of the participants in the line-up resembled [defendant]. Such discrediting of the key prosecution witness would have created a reasonable doubt in the minds of the jury, leading them to acquit [defendant].

victim's identification testimony, defendant made no objection to the victim's identification testimony at trial. Indeed, defendant cross-examined the victim about the first line-up at which she tentatively identified a person other than defendant as the person who took her purse and bag. By failing to make the requisite objection at trial, defendant waived his right to raise this issue on appeal. *State v. Overstreet*, 694 S.W.2d 491, 494 (Mo.App.1985).

We have, nevertheless, reviewed defendant's claim of error under Rule 30.-20, the plain error rule, to determine whether admitting the identification testimony into evidence caused manifest injustice or substantial prejudice to defendant. Factors to be considered include the witness's opportunity to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the description of the criminal, the witness's degree of certainty about the identification and the time between the crime and the identification. *State v. Grounds*, 676 S.W.2d 10, 11 (Mo.App.1984).[2] In the case at bar, the victim first saw defendant when he was standing only a few feet away from her in a line of customers at a service station. The victim then had an unimpeded view of defendant from approximately forty feet away during the robbery. Finally, the victim positively identified defendant as the robber at a line-up held within one week of the robbery. We hold, accordingly, that the trial court properly denied defendant's motion to dismiss or to exclude the victim's identification testimony.

In his second allegation of error, defendant alleges that the trial court erred in refusing to submit a jury instruction on a lesser included offense. The court submitted instructions on first degree robbery and felony stealing, but refused to submit defendant's tendered instruction on misde-

meanor stealing. Defendant argues that the misdemeanor stealing instruction should have been submitted because the state's evidence did not establish all the necessary elements of felony stealing. Specifically, defendant alleges the evidence did not show that the stolen property included credit cards, as required under § 570.030.2(3)(c) RSMo 1978 (now § 570.-030.3(3)(c) RSMo Supp.1985). At trial, the victim testified that her stolen wallet contained "an Amoco card, a Shell card, a Stix card, Famous card, a Triple A card, [and a] Nieman-Marcus card." Defendant contends that the victim could arguably have been referring merely to business cards.

Misdemeanor stealing and felony stealing are lesser included offenses under first degree robbery. *State v. Swims*, 647 S.W.2d 191, 192 (Mo.App.1983). Section 556.046.2 RSMo 1978 requires the trial court to instruct the jury on lesser degrees of the offense charged and on lesser included offenses only if some affirmative evidence establishes that an essential element of the greater offense is lacking. *State v. Perkins*, 679 S.W.2d 410, 411 (Mo.App. 1984). Such evidence must be sufficient to authorize acquittal on the greater offense while sustaining a conviction on the lesser offense. *State v. Robinson*, 672 S.W.2d 743, 745 (Mo.App.1984). The trial court errs if it does not instruct on all lesser included offenses supported by the evidence. *State v. Smith*, 592 S.W.2d 165, 165 (Mo. banc 1979).

We cannot agree that the trial court erred in refusing to instruct on misdemeanor stealing. The only reasonable interpretation of the victim's above-quoted testimony leads to the conclusion that she had credit cards stolen. It is inconceivable that she would have detailed the loss of mere business cards during her testimony. Furthermore, the jury did not convict defend-

---

2. The state urges that we also take into account that the police did not intentionally destroy the photograph. The *Brady* court emphasized, however, that the prosecution's good faith remains irrelevant to this issue. *Brady, supra* 373 U.S. at 87, 83 S.Ct. at 1196. *See also Agurs, supra* 427 U.S. at 110, 96 S.Ct. at 2400 ("Nor do we believe the constitutional obligation is measured by the moral culpability, or the willfulness, of the pros-

ecutor."); *Walker v. Lockhart*, 763 F.2d 942, 957 (8th Cir.1985) ("It is irrelevant whether the State acted in good faith or bad faith in failing to disclose the evidence; negligent suppression may be sufficient."); *Dayton, supra* at 477 ("The deception from a negligent nondisclosure causes no less injury to the administration of criminal justice than a suppression made by design or guile.").

ant of felony stealing but of first degree robbery, which does not require that the stolen property include credit cards. *See* § 569.020 RSMo 1978. The presence or absence of credit cards among the stolen property was not, therefore, a critical element in the jury's determination of defendant's guilt. Accordingly, we reject defendant's contention on this issue.

In his final allegation of error, defendant alleges that the trial court erred in admitting evidence of a fingerprint comparison because such evidence denied defendant's sixth amendment right to confront the witnesses against him. On the night of the robbery, police detectives dusted the doors of the victim's car for latent fingerprints. A day or two later, defendant's fingerprints were rolled in ink by a police officer. On March 26, 1982, three days after the robbery, Donald Brian, a latent fingerprint examiner, compared the latent prints with defendant's rolled prints. Brian concluded that two of the latent prints were made by defendant.

At the time of trial, the officer who had rolled defendant's prints was not available as a witness. The trial court thus ordered that the police roll defendant's prints again the day before the trial began. Brian then compared the latent prints with the new set of rolled prints, and again concluded that two of the latent prints had been made by defendant. Both Brian and the detective who rolled defendant's prints the second time testified as witnesses for the prosecution.

At trial, defendant objected when the prosecution offered into evidence a card containing the two latent prints. Defendant observed that the card bore Brian's initials, dated March 26, 1982, the date of the first fingerprint comparison. Defendant thus contended that such evidence was inadmissible because the officer who rolled the prints used in the first comparison was not available as a witness. The trial court overruled this objection and admitted the prints into evidence. Defendant also objected when Brian testified that on the day before trial he had "reidentified" the latent prints as those of defendant. Defendant argued that this testimony impermissibly referred to the initial comparison on March 26, 1982. The trial court also overruled this objection.

■ Assuming *arguendo* that the trial court erred in admitting evidence and testimony relating to the initial fingerprint comparison, we can discern no likelihood of prejudice to defendant. The fingerprint card and Brian's testimony made only indirect and oblique references to the earlier comparison. Such references could have had no significant impact upon the jury in assessing the validity of the fingerprint evidence. Moreover, defendant was able to cross-examine the detective who rolled the prints used in Brian's second comparison, wherein Brian reached the same conclusion that he had reached in the first comparison. Accordingly, we hold that the trial court's admission of such evidence did not violate defendant's sixth amendment right of confrontation.

Judgment affirmed.

KAROHL, P.J., and SIMON, J., concur.