STATE of Missouri, Respondent,

v.

John METHFESSEL, Appellant.

No. 50689.

Missouri Court of Appeals,
Eastern District,
Division Three.

Aug. 12, 1986.

Motion for Rehearing and/or
Transfer to Supreme Court
Denied Sept. 17, 1986.

Application to Transfer
Denied Nov. 18, 1986.

Susan L. Hogan, Columbia, for appellant.

William L. Webster, Atty. Gen., Lee A. Bonine, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Judge.

Defendant appeals from his convictions on one count of first degree burglary, § 569.160 RSMo 1978, and one count of first degree assault, § 565.050 RSMo 1978. Defendant was sentenced to fifteen years imprisonment on the burglary count and thirty years on the assault count, the sentences to run consecutively.

On appeal, defendant argues that the trial court erred in: (1) refusing to instruct the jury on second degree assault; (2) allowing defendant to be tried while wearing leg restraints; (3) overruling defendant's motion to suppress his oral statements; and (4) refusing to admit into evidence the transcript of Chester Bettis's testimony or, in the alternative, to grant a continuance when such transcript was received by defense counsel. We affirm.

On May 15, 1983, the victim, Charles Robinson, was an inmate at the Missouri State Penitentiary. At approximately 6:30 p.m. on that date, while Robinson was working in the penitentiary chapel, three other inmates—Chester Bettis, Gary Dew and defendant—entered the chapel and informed Robinson that they intended to tie him up. Robinson resisted, and a struggle ensued. While Bettis restrained Robinson, defendant broke off a stereo extension cord and tied him to a chair. Defendant then broke the handle off a paper cutter, and he and Bettis moved behind Robinson. Robinson was then hit on the head three or four times before losing consciousness.

Robinson later regained consciousness and was cut loose by a prison guard. Robinson was bleeding profusely, but was able to walk to the prison hospital. Robinson again lost consciousness temporarily upon his arrival at the hospital.

At trial, Dr. Richard Bowers, chief medical administrator for the Department of Corrections, testified that Robinson's symptoms immediately after the assault indicated that he had suffered a brain concussion. These symptoms included multiple lacerations and trauma to the head, sluggish pupillary reflexes, increasing lethargy and loss of consciousness. Dr. Bowers tes-

tified that a person suffering a concussion normally experiences a temporary lapse of memory.

Frank Bosworth, the housing unit sergeant for the housing unit in which defendant lived, testified that defendant left his cell for a recreation period at about 6:00 p.m. on the night of the assault. Defendant returned approximately one hour later, wearing a long raincoat and holding one arm close to his body. Bosworth searched defendant and discovered a radio. Defendant claimed to have purchased the radio from another inmate, but the radio did not have the registration marks required on all radios owned by inmates.

Arthur Dearixon, an investigator at the penitentiary, testified that he questioned defendant at approximately 11:25 p.m. on the night of the assault.[1] After being advised of his constitutional rights, defendant stated that he understood his rights but was unwilling to sign a waiver of rights form. Defendant then confessed that he had broken into the chapel with Bettis and Dew, that he had helped beat Robinson with the paper cutter, and that he had stolen the radio. Dearixon testified that defendant was not verbally or physically harassed in any manner during this interview. A photograph taken of defendant at the conclusion of this interview showed no signs of physical abuse.

 In his first point on appeal, defendant argues that the trial court erred in refusing to instruct the jury on second degree assault, which is a lesser-included offense under first degree assault. Section 556.046.2 RSMo 1978 requires the trial court to instruct the jury on lesser degrees of the charged offense only if some affirmative evidence establishes that an essential element of the greater offense is lacking. *State v. Williams,* 708 S.W.2d 705, 708 (Mo.App.1986). Such evidence must be sufficient to authorize acquittal on the greater offense while sustaining a conviction on the lesser offense. *Id.* Defendant contends that the evidence in the instant case supported a conviction on second degree assault but did not support a conviction on first degree assault.

The trial court instructed the jury under § 565.050.1(2) RSMo 1978, which provides that a person commits first degree assault if he "attempts to kill or to cause *serious physical injury* to another person." (Emphasis added.). Defendant tendered—and the trial court rejected—an instruction under § 565.060.1(1) RSMo 1978, which provides that a person commits second degree assault if he "knowingly causes or attempts to cause *physical injury* to another person by means of a deadly weapon or dangerous instrument." (Emphasis added.). Defendant submits that the jury could reasonably have found that defendant attempted to cause "physical injury" to Robinson, but that defendant did not attempt to kill or cause "serious physical injury" to him. Subsection 20 of § 556.061 RSMo Cum.Supp.1984 defines "physical injury" as "physical pain, illness, or any impairment of physical condition," while subsection 26 defines "serious physical injury" as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body."

Defendant relies principally upon *State v. Ellis,* 639 S.W.2d 420 (Mo.App.1982). In that case, the appellate court reversed defendant's conviction on first degree assault because the trial court had failed to instruct the jury on second degree assault.[2] The undisputed facts showed that defendant and another prison inmate had attacked a fellow inmate with a knife and a lead pipe. The victim suffered nine wounds, seven of them puncture wounds and two of them lacerations. All of the puncture wounds and one of the lacerations were superficial, and were treated merely by cleansing. The other laceration measured

---

1. Two other prison officials, Bill Armontrout and Donald Wyrick, were also present during this questioning.

2. The statutory provisions at issue in *Ellis* were the same as those before us in the instant case.

one and one half inches in length, and required suturing. Given these facts, the appellate court found that it was impossible to determine "as a matter of law that the evidence ... showed only a 'serious physical injury,' that is, one creating a 'substantial risk of death.'" *Id.* at 422. The court thus held that the trial court had committed reversible error by failing to instruct the jury on second degree assault.

■ We find the instant case distinguishable from *Ellis*. Whereas the victim in *Ellis* received only minor puncture wounds and lacerations, Robinson suffered a brain concussion that may have lasting effects. The loss of consciousness and memory attendant to a brain concussion represents a protracted impairment of the function of the brain, and thus constitutes a "serious physical injury" under § 556.061(26) RSMo Cum.Supp.1984. Robinson also suffered multiple lacerations and trauma to the head which rendered him unconscious. Accordingly, we hold that the trial court did not err in refusing to instruct the jury on second degree assault.

In his second point on appeal, defendant argues that the trial court erred in allowing defendant to be tried while wearing leg restraints. Defendant contends that these visible restraints caused the jury to be prejudiced against him and thus denied him his constitutional right to due process of law.

■ A defendant has the right to appear before the jury unfettered unless good cause for physical restraints is shown. *State v. Gilmore*, 661 S.W.2d 519, 525 (Mo. banc 1983), *cert. denied*, 466 U.S. 945, 104 S.Ct. 1931, 78 L.Ed.2d 473 (1984). However, the use of restraints for the purpose of maintaining order and security in the courtroom is a matter within the discretion of the trial court. *State v. Guinan*, 665 S.W.2d 325, 331 (Mo. banc), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). In determining wheth-

er physical restraints are required, the court should consider

> the presence or absence of disruptive conduct on the part of the defendant prior to or during the trial, the presence or absence of threats of such misconduct, the trial atmosphere, the likelihood of an attempt to escape, the age and physical attributes of the accused, the nature of the offense on trial, the size and mood of the audience and the adequacy of alternative remedies.

*State v. Borman*, 529 S.W.2d 192, 194 (Mo. App.1975). The propriety of physical restraints thus depends upon the particular facts of each case. *Id.*

■ In the instant case, the evidence before the court showed that defendant had demonstrated an ability to remove himself from handcuffs and had attempted to escape from the Missouri State Penitentiary on January 11, 1984.[3] This evidence indicated a likelihood that defendant would attempt to escape and was thus sufficient to support the use of leg restraints against defendant. We note, moreover, that defendant's legs would presumably have been concealed below the counsel table during trial, thereby minimizing any possibility of prejudice.[4] Accordingly, this point is denied.

■ In his third point on appeal, defendant argues that the trial court erred in denying defendant's motion to suppress his statements to prison investigators. At the hearing on the motion to suppress, defendant testified that during the interrogation at 11:25 p.m. on the night of the assault he was hit on the back of the head with a blackjack, then was thrown to the floor while one of the investigators stepped on his neck. Defendant also testified to verbal threats by the investigators.

Initially, we note that defendant did not object at trial when Arthur Dearixon testified regarding defendant's statements, and thus defendant failed to preserve this issue

---

**3.** In that incident, defendant placed a dummy in his cell, went out a window and tried unsuccessfully to get over the prison wall with a rope rigging device.

**4.** *See Gilmore,* 661 S.W.2d at 525.

for appellate review. *State v. Toliver,* 544 S.W.2d 565, 568 (Mo. banc 1976); *State v. Crespo,* 664 S.W.2d 548, 550 (Mo.App.1983). Our review is thus governed by Rule 29.-12(b), the "plain error" rule.

We find no error, plain or otherwise, on the record before us. A confession is involuntary and inadmissible if the investigators used physical or psychological coercion sufficient to overbear defendant's will, or if the totality of circumstances indicate that the defendant was deprived of a free choice to admit, deny or refuse to answer questions presented to him. *State v. Brown,* 698 S.W.2d 9, 11 (Mo.App.1985). At the hearing on the motion to suppress, Arthur Dearixon and Bill Armontrout each testified that defendant was properly advised of his rights and was not physically or verbally harassed in any manner. Moreover, a photograph taken of defendant after the questioning showed no signs of physical abuse.[5] In reviewing the trial court's disposition of defendant's motion to suppress, we must defer to the trial court's superior opportunity to determine the credibility of the witnesses and the weight of the evidence. *State v. Beck,* 687 S.W.2d 155, 158 (Mo. banc 1985). This point is denied.

■ In his fourth point on appeal, defendant argues that the trial court erred in refusing to admit a transcript of the testimony of Chester Bettis from a prior proceeding, or, in the alternative, to grant a continuance when defense counsel received this transcript on the date of trial. The transcript of Bettis's testimony has not, however, been furnished to us, and defendant has given no indication as to the substance of that testimony. We are thus unable to determine whether—or to what degree—defendant was prejudiced by the exclusion of such evidence. "Appellate courts will not interfere in the reception or rejection of evidence absent a showing of prejudice." *State v. Woolford,* 545 S.W.2d 367, 375 (Mo.App.1976). Accordingly, this point must be denied.

The judgment is affirmed.

KAROHL, P.J., and SIMON, J., concur.

5. Defendant claimed that this photograph was actually taken prior to the interview in question.