STATE of Missouri, Respondent,

v.

Jimmie QUINN, Appellant.

No. 14703.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 30, 1986.

Janet M. Thompson, Columbia, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Chief Judge.

Jimmie Quinn ("appellant"), tried by the court without a jury, was found guilty of the class C felony of assault in the second degree, § 565.060.1(3), RSMo Cum.Supp. 1984,[1] and sentenced as a persistent offend-

---

1. Section 565.060, RSMo Cum.Supp.1984, provides, in pertinent part:

"1. A person commits the crime of assault in the second degree if he:

    .    .    .    .    .

(3) Recklessly causes serious physical injury to another person; ...."

er, § 558.016.3, RSMo Cum.Supp.1984, to 10 years' imprisonment.

Appellant, in his brief, relies on two points, the first of which is:

"The trial court erred in denying appellant's motion for directed verdict at the close of all the evidence because there was insufficient evidence from which the trier of fact could find that appellant recklessly caused serious physical injury to Marvin Williams in that while the evidence established that Williams sustained a physical injury, it did not establish that the injury was serious as any alleged impairment was not shown to be of a protracted nature and any alleged disfigurement was not shown to be serious."

Marvin Williams, the victim, was injured October 26, 1985, when a shotgun, held by appellant, discharged, the pellets therefrom striking Williams' left foot. Inasmuch as appellant does not challenge the sufficiency of the evidence to establish that he recklessly caused Williams' injury, we limit our review to the issue whether the evidence was sufficient to support a finding that Williams' wound was a "serious physical injury," as defined by § 556.061(26), RSMo Cum.Supp.1984.[2]

In resolving that issue, we accept as true all evidence in the record tending to prove appellant's guilt, together with inferences favorable to the State that can reasonably be drawn therefrom, and we disregard all contrary evidence and inferences. *State v. Giffin,* 640 S.W.2d 128, 130[2] (Mo.1982); *State v. Hood,* 680 S.W.2d 420, 423[4] (Mo. App.1984).

So viewed, the evidence establishes that the blast from the shotgun struck the center of Williams' left foot. Williams' testimony included this:

"Q Did you fall on the ground?

A At first, I didn't. He shot me, then I started limping.

Q You didn't know he shot you?

A No, really I didn't feel it. Then I looked, I started limping, then I passed out.

.     .     .     .     .

Q Were you bleeding then?

A Yes."

Williams explained that after he lost consciousness, a friend carried him some two and a half blocks to a house, where an ambulance was called. A police officer, who observed Williams at that location, testified: "He was obviously in quite a bit of pain. He was bleeding pretty bad from his left foot."

Williams recalled being taken to a hospital by the ambulance. Williams' testimony regarding his medical treatment included this:

"Q Did they take shot out of your foot?

A They took about 18 buckshot—

Q Do you have a scar on your foot today?

A Yes.

Q On the top of your foot?

A Top and on the side.

Q Do you have any pain in your foot today?

A Yes.

Q I noticed you were not limping when you went to the witness stand. Are you able pretty much to do what you could do before you got shot?

A No."

Appellant points out that it was never contended that Williams' wound created a substantial risk of death. Thus, says appellant, the inquiry focuses on whether there was serious disfigurement or protracted loss or impairment of the function of Williams' left foot. Appellant maintains that the evidence failed to demonstrate that the shooting caused any of those conditions.

**2.** Section 556.061(26), RSMo Cum.Supp.1984, states:

"'Serious physical injury' means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body."

In support of his contention, appellant relies on the following language in *State v. Mace*, 665 S.W.2d 655, 660 (Mo.App.1984): "[T]he quality of evidence required to prove 'serious physical injury' is more demanding than the quality of evidence required to prove 'physical injury.'" That case, however, does not aid appellant. There, the accused assaulted a pregnant woman, causing fluid to leak from the external wall of her cervix. This made her reproductive system susceptible to infection, which, in turn, could have been fatal to the unborn child. To combat this danger, the victim, who could neither sit nor walk without pain, was put on bed rest and antibiotics. Ten days after the attack, the victim gave birth to a healthy child. The opinion, in holding that the evidence supported a finding of serious physical injury, stated: "When measured against the controlling time frame, the leakage of fluid and its propensity for making the victim's reproductive system susceptible to infection with attendant danger to the unborn child, standing alone, demonstrates that the heinous attack portrayed by the victim's testimony resulted in 'protracted ... impairment of the function of [a] bodily ... organ.'" *Id.* at 662.

*State v. Ellis*, 639 S.W.2d 420 (Mo.App. 1982), the only other case cited by appellant, is likewise unavailing. There, the accused was charged with, and convicted of, assault in the first degree, § 565.050, RSMo 1978.[3] The victim's wounds were seven puncture wounds and two lacerations. All puncture wounds were superficial, as was one of the lacerations. The other laceration was an inch and a half scalp laceration, closed by suturing. Commenting on the wounds, a physician testified, "I think they possibly could (cause death or serious physical injury), especially the trauma to the head could have."

The pivotal issue on appeal in *Ellis* was whether the trial court erred in failing to instruct the jury on assault in the second degree, § 565.060, RSMo 1978. By reason of the manner in which the assault was alleged to have been committed, a verdict of guilty of assault in the second degree would have been possible if the jurors had found that the victim sustained merely a "physical injury," instead of a "serious physical injury." The opinion in *Ellis* held that while the evidence was sufficient to support a finding that the victim sustained a serious physical injury, the appellate court could not say that reasonable jurors might not have found that the injury caused or attempted was merely a physical injury. *Id.* at 422.

In the instant case, appellant, unlike *Ellis*, argues that the evidence was insufficient to support a finding that Williams' wound was a serious physical injury. In our view, Williams' wound was at least as severe as the most serious wound in *Ellis*. Consequently, *Ellis* is of no value to appellant.

In *State v. Maxie*, 693 S.W.2d 161 (Mo. App.1985), the victim, an 80–year-old female, sustained bruises on her face and mouth and an apparently broken rib. These injuries caused her to lose consciousness. The accused's contention that the victim sustained a mere "physical injury," instead of a "serious physical injury" (as found by the jury) was rejected.

Measured by *Mace*, *Ellis* and *Maxie*, we hold that the evidence in the instant case was sufficient to support a finding that Williams' wound was a serious physical injury as defined by § 556.061(26), RSMo Cum.Supp.1984.[4] While the scar on the top and side of Williams' left foot may arguably fall short of "serious" disfigurement, we believe the evidence amply supports a finding that Williams suffered protracted impairment of the foot's function. The cause was tried January 31, 1986, more than three months after the shooting. Wil-

---

**3.** Sections 565.050 and 565.060, RSMo 1978, have been amended since *Ellis*. The versions of those statutes in effect at the time of the offense in the instant case appear in RSMo Cum.Supp. 1984.

**4.** Footnote 2, *supra*.

liams' uncontradicted testimony was that he had pain in his foot on the date of trial, and that he was not able to do what he could before the shooting. That evidence, while perhaps not overwhelming, is, viewed favorably to the State, sufficient to support a finding of serious physical injury, as statutorily defined. Appellant's first point is, consequently, denied.

Appellant's other assignment of error is:

"The trial court erred in finding appellant to be a persistent offender and in allowing the State to prosecute him as such because insufficient evidence was adduced to prove that appellant had been convicted of two prior felonies in that the State did not introduce into evidence the case files of the two alleged prior felony convictions."

At the outset of the trial, the prosecuting attorney called as a witness the deputy circuit clerk of Mississippi County, who brought with her, and identified, two "felony files" from the office of the circuit clerk of Mississippi County. The witness testified that one file, identified as case number CR280–209FX, showed that on September 9, 1980, one Jimmie "Chick" Quinn [5] was convicted of assault in the second degree. The witness testified that the other file, identified as case number CR280–246FX, showed that on May 10, 1983, one Jimmie "Chick" Quinn was convicted of the class D felony of attempted burglary, second degree.

At that juncture, the transcript shows this:

"[PROSECUTOR]: Your Honor, the State offers into evidence for the purposes of the Persistent Offender Statute the two case files which have just been referred to in testimony by the Ceputy [sic] Circuit Clerk.

THE COURT: Mr. Beatty? [6]

MR. BEATTY: Your Honor, again, I would object, for the record. I don't feel it has been sufficiently proven.

THE COURT: Let the record reflect the Court will take judicial notice of its own records, particularly that Mr. Quinn, a/k/a "Chick" Quinn, was convicted on or about 9–9–80 of assault in the second degree in Mississippi County and in Case No. CR280–209FX; further, on 5–10–83, the defendant, Mr. "Chick" Quinn, a/k/a Jimmie Quinn, was found guilty of the felony of attempted burglary in the second degree in the Circuit Court of Mississippi County in Case No. 280–246FX.

Therefore, in the event he's found guilty of these charges, would be a persistent offender as defined under the statutes of the State of Missouri."

Appellant, in his brief, argues that "the records were never introduced into evidence and there was thus no competent basis upon which the court could make a finding, pursuant to the requirements of Section 558.021, RSMo Cum.Supp.1984, that appellant was a persistent offender."

In considering that argument, we note that no such contention was made in the court below.

Defense counsel's objection, quoted above, was made when the prosecutor offered the two "felony files" in evidence. Defense counsel's objection, in our view, was subject to two interpretations. It could have been understood as an assertion that one or both of the files had not been properly identified as a record of the Circuit Court of Mississippi County. It could also have been understood as a contention that the State's evidence, up to that point, was insufficient to prove one or both of the prior convictions. The trial court, it seems to us, placed the latter interpretation on the objection.

After the trial court announced it was taking "judicial notice of its own records," and stated its findings, defense counsel registered no protest about the trial court taking judicial notice of the records, nor did defense counsel remonstrate that the

---

5. The State presented evidence that appellant was "known in some circles as 'Chick' Quinn."

6. Daniel A. Beatty, Public Defender, Judicial Circuit 33, represented appellant at trial.

court's findings were based on records that had not been received in evidence.

 It is therefore doubtful that the point asserted on appeal is properly before us for review. We need not, however, decide that question, as there was sufficient evidence to support the trial court's findings even if the two case files were never formally received in evidence. Every finding the trial court made was supported by the testimony of the deputy circuit clerk, which came in without objection. That being so, the trial court's failure to receive the records in evidence supplies no basis for overturning the findings.[7] Having reached that conclusion, we need not comment on whether, or under what circumstances, a trial court can take "judicial notice" of its own records in determining whether an accused is a persistent offender. Those interested in that subject can study, among other cases, *State v. Surgeon*, 456 S.W.2d 293, 295–96[4] (Mo.1970); *State v. Meeks*, 655 S.W.2d 536, 539[6, 7] (Mo.App.1983); *State v. Cullen*, 646 S.W.2d 850, 855[6–8] (Mo.App.1982); and *State v. Gilliam*, 618 S.W.2d 733, 734–35[3] (Mo.App.1981).

Appellant's second point is denied.

Judgment affirmed.

GREENE, P.J., and TITUS, J., concur.

---

**7.** We would be remiss if we neglected to point out that § 558.016.3, RSMo Cum.Supp.1984, defines a persistent offender as one who has pleaded guilty to or has been found guilty of two or more felonies *committed at different times.* There was no evidence, and no finding by the trial court, that the second degree assault, for which appellant was convicted September 9, 1980, and the attempted second degree burglary, for which appellant was convicted May 10, 1983, were *committed* at different times. However, no complaint about that oversight is lodged by appellant in this appeal, and as it could be reasonably inferred from the time span between the two convictions that the felonies were committed at different times, we decline to explore *sua sponte* the effect of the omission on the trial court's determination that appellant was a persistent offender.