**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**John William LARRY,
Defendant-Appellant.**

**No. 75–2331.**

United States Court of Appeals,
Sixth Circuit.

Argued April 12, 1976.

Decided June 25, 1976.

Rehearing and Rehearing En Banc
Denied Aug. 11, 1976.

Gershwin A. Drain, Federal Defender Office, F. Randall Karfonta, William L. Woodard, Detroit, Mich., for defendant-appellant.

Ralph B. Guy, Jr., U. S. Atty., Gordon S. Gold, Loren Keenan, Asst. U. S. Attys., Detroit, Mich., for plaintiff-appellee.

Before EDWARDS and CELEBREZZE, Circuit Judges, and GREEN *, Senior District Judge.

GREEN, Senior District Judge.

Appellant was convicted by a jury upon a two-count indictment charging assault with intent to commit sodomy, 18 U.S.C. §§ 113(b) and 7, and commission of the substantive offense of sodomy, 18 U.S.C. §§ 13 and 7. The incident giving rise to those charges occurred at the Federal Correctional Institution at Milan, Michigan where appellant and the alleged · victim, Gary Higginbotham, were both inmates. Appellant's conviction of the charges was at his second trial upon the indictment, the first trial having terminated upon the declaration of a mistrial after the jury had commenced its deliberations.

Appellant alleges two errors in the trial court which he asserts warrant reversal of the above conviction. The initial assignment of error is that the District Court denied appellant's Fifth Amendment right not to be subjected to double jeopardy by retrying him after an alleged premature declaration of mistrial at his first trial. The second assignment of error is that the trial court denied appellant's Sixth Amendment right to confront witnesses against him by allowing a government witness to invoke the privilege against self-incrimination as to matters the witness had disclosed at the previous trial.

Appellant was first brought to trial on December 3, 1974. After three days of testimony the case was adjourned until December 9, apparently for closing arguments and instructions to the jury. The jury commenced its deliberations at some time on December 9, the precise time not being clear from the record.

During the course of its deliberations on December 10, 1974 the jury propounded questions to the court regarding several collateral matters. The trial judge called the jury into open court for his responses. The record does not reflect the time at which that occurred, although it was prior to the noon recess. Appellant asserts that the jury had been in deliberations for approximately 3½ hours at the time.

After responding to the questions presented by the jury, the court engaged the forelady in the following colloquy:

The Court: Now bearing those questions in mind I don't think that I have helped you much, if any, with the question you have asked because I feel satisfied that I am not permitted to any farther for fear of creating error. Is it your opinion, Madam Forelady, that you will be unable to reach a verdict?

The Forelady: Yes it is.

The Court: And that you are definitely at a deadlock?

The Forelady: Yes sir. We seem to be.

The Court: You seem to be?

The Forelady: Yes.

The Court: Do you think it would continue?

The Forelady: We haven't made any headway at all.

The Court: And has it been, whatever the situation, I don't want to know the numbers, has it been that way from the outset?

The Forelady: Yes, sir.

---

* The Honorable Ben C. Green, Senior District Judge, for the Northern District of Ohio, sitting by designation.

The Court: And hasn't changed.

The Forelady: No, sir.

The Court: Under the circumstances that here exist I do declare this to be a mistrial . . .

Prior to the commencement of the second trial in June, 1975 appellant moved for dismissal of the indictment on double jeopardy grounds. That motion was denied, and the court permitted the trial to go forward.

As in the first proceeding, the essence of the government's case at the second trial was that the appellant requested a visit from a fellow inmate named Higginbotham, and upon Higginbotham's arrival at appellant's cell the appellant assaulted him and forced him to submit to a sodomous act. As part of its proof against appellant the government presented expert medical testimony to the effect that an examination of Higginbotham shortly after the time of the alleged assault revealed certain rectal abrasions and fissures which had been caused by the introduction of some foreign object into the rectum.

During the cross-examination of a prosecution witness named Evans defense counsel attempted to pursue a line of inquiry relating to the witness' opinion as to the reason Mr. Higginbotham and appellant were together in appellant's cell, in the course of which counsel sought to have the witness testify as to a statement he had previously given to the F.B.I. in which Evans expressed a suspicion that Higginbotham was dealing in drugs at the institution. Evans stated that while he had an opinion he did not in fact know why the two men were together. The trial court then sustained an objection to further testimony on that subject by the witness and would not permit cross-examination based upon the statement, on the basis that the statement merely reflected "suspicion and belief, as opposed to knowledge".

Upon the trial court's sustaining of the prosecution's objections defense counsel then asked "Did you ever use marijuana in the institution?" That question was objected to. The jury was excused, and the court then advised the witness of his privilege against self-incrimination under the Fifth Amendment. Following such advice the question was again propounded, and the witness declined to answer "because it might incriminate me". Defense counsel then suggested to the court that the witness had waived his Fifth Amendment rights by testifying on the same subject at the first trial. The court rejected that contention on the basis that the witness had not been advised of his privilege at the first trial.

The initial question raised by this appeal is whether the declaration of a mistrial at appellant's first trial was improper so that reprosecution subjected appellant to double jeopardy within the meaning of the Fifth Amendment.

■ At the outset it should be noted that the effect of the Double Jeopardy Clause is to preserve a defendant's right to have his trial completed by a particular tribunal, *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949), and to protect a defendant from the considerable burdens which are imposed by multiple prosecutions. Thus reprosecution is barred where "bad faith conduct by the judge or prosecutor" threatens "harassment of an accused by successive prosecutions or declarations of a mistrial so as to afford the prosecution a more favorable opportunity to convict" the defendant. *Gori v. United States,* 367 U.S. 364, 369, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961). However, the prohibition against placing an individual twice in jeopardy for the same offense is not absolute, in that the Fifth Amendment does not require that each time a defendant is put on trial before a court of competent jurisdiction he must be set free should the trial fail to end in a final judgment. *Wade v. Hunter, supra,* 336 U.S. at p. 688, 69 S.Ct. 834. When, taking all circumstances into account, there is a "manifest necessity for the [mistrial] or the ends of public justice would otherwise be defeated," *United States v. Perez,* 9 Wheat. 579, 580, 6 L.Ed. 165 (1824), the court is invested with the authority to discharge the jury and the defendant may be re-tried consistent with

the Fifth Amendment. *Illinois v. Somerville,* 410 U.S. 461, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *United States v. Jorn,* 400 U.S. 470, 481, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Gori v. United States, supra,* 367 U.S. at 364, 368, 81 S.Ct. 1523 (1961); *Wade v. Hunter, supra,* 336 U.S. at pp. 689–690, 69 S.Ct. 834.

■ The sole limitation on the authority of the court to determine that a mistrial is "manifestly necessary" is that the judge must exercise his "sound discretion" in determining that the ends of public justice would not be served by a continuation of the proceedings. *United States v. Jorn, supra,* 400 U.S. at p. 481, 91 S.Ct. 547; *Gori v. United States, supra,* 367 U.S. at p. 368, 81 S.Ct. 1523; *United States v. Perez, supra,* 9 Wheat. at p. 580, 6 L.Ed. 165.

■ Appellant does not deny the general rule that "manifest necessity" for the declaration of a mistrial may be found in the inability of a jury to reach a verdict. Appellant does maintain that in this instance the declaration of the mistrial was so premature that it must be considered to have been an abuse of the trial court's discretion. If a mistrial had been improperly declared appellant's retrial would have been violative of his Fifth Amendment right not to be subjected to double jeopardy.

Examination of the decisional authorities cited by both sides herein reflects the considerations which other reviewing courts have applied in determining this issue, but they do not provide a definitive precedential proposition to be applied in this case. In the final analysis, any question of the propriety of the exercise of judicial discretion is a factual matter which can only be determined on a case by case basis dependent upon the individual circumstances under review. The Supreme Court has stated that the determination as to whether a mistrial is to be declared hinges upon the taking into account of all circumstances, which "forbid[s] the mechanical application of an abstract formula". *Wade v. Hunter, supra,* 336 U.S. at p. 691, 69 S.Ct. at p. 838.

In this instance the presentation of evidence in appellant's initial trial was concluded within a three day span. It appears that the issue for the jury's consideration was a simple one—was Mr. Higginbotham in fact assaulted by appellant at a time when they were alone in appellant's cell—which would be controlled by the jury's decision on the credibility of the major witnesses. The jury was in deliberations over a two-day span, the net result of which was the propounding of questions to the court which had no reasonable bearing on the matter of the defendant's guilt or innocence.

We believe that it was within the trial judge's discretion, apparently sensing from the jury's questions that conflicts had arisen as to extraneous matters and that a deadlock might well have developed, to inquire of the forelady as to the jury's ability to reach a verdict. It is noted that in his inquiry of the forelady the trial judge was scrupulously careful in avoiding any potential disclosure as to the division within the jury. The mistrial was not declared until after the trial judge had made repeated inquiry of the forelady as to the jury's potential of reaching an agreement, and following his being informed that the jury had made no progress at all in their deliberations and that the division within the jury had not changed since the outset of the deliberations. There was not the slightest doubt or equivocation expressed by the forelady regarding the jury's deadlock, nor did any of the jurors seated in the jury box in open court indicate a view contrary to that of the forelady.

■ Appellant complains of the trial judge's failure to either compel the jury to deliberate further or to make individual inquiry of the members of the panel before discharging the jury. The failure to make individual inquiry would not of itself constitute an abuse of discretion. *U. S. ex rel. Stewart v. Hewitt,* 517 F.2d 993, 996 (3rd Cir., 1975). Inquiry through the foreperson of the jury is acceptable. *United States v. See,* 505 F.2d 845, 851 (9th Cir., 1975). As to the insistence upon a deadlocked jury

being compelled to continue deliberations it has been said that such course of conduct "more often than not defeats the ends of public justice; not only will such compulsion needlessly waste valuable judicial resources, it may coerce erroneous verdicts," *United States v. Goldstein,* 479 F.2d 1061, 1068 (2d Cir., 1973).

■■■ We have concluded that, while the facts of this action present a close question, taking into account all of the circumstances surrounding appellant's first trial, the trial judge, who had the firsthand capability of evaluating the ability of the twelve members of the jury who sat before him to arrive at a verdict, did not abuse his discretion in declaring a mistrial. That being so, appellant's retrial violated no constitutional guarantees.

Appellant's second assignment of error is that the trial court violated his Sixth Amendment right to confrontation when it permitted a government witness named Evans to invoke the privilege against self-incrimination as to matters disclosed by him at a previous trial because he had not been given an express warning of his Fifth Amendment rights in the previous trial.

During the course of cross-examination defense counsel asked Evans the following question: "Did you ever use marijuana in the institution?" Ultimately, Evans declined to answer the question on Fifth Amendment grounds following advisement of his constitutional privilege by the court. At appellant's first trial, Evans had been allowed to respond to the above question over objection, and had given further testimony as reflected hereinafter. At the first trial, Evans had not been advised of his constitutional privilege.

The full ruling of the court on the government's objection at the second trial was as follows:

This witness has been asked and has testified that although he had an opinion as to why the defendant here wanted to see Mr. Higginbotham, he did not know. He was then asked to review an investigative report by the F.B.I. which contains statements that he made to the F.B.I. regard-

ing this matter. A review of that report indicates that there is no inconsistency in the testimony that he has given here and the report. Specifically, the language used in the report is that he suspects that Higginbotham brings dope into the institution, that he believed that Higginbotham brings it in by securing small amounts in his rectum, and suspects other things. I won't go into them all.

At any rate, again, we are dealing in an area of suspicion and belief, as opposed to knowledge; so, there being no inconsistency, this approach to impeachment would be improper and that is the reason for sustaining the objection.

Now, we have before us this issue of the question now asked, whether or not the witness used marijuana while at Milan, and in that vein, I think it is prudent and appropriate to advise the witness of certain constitutional rights.

It is evident from the court's ruling that the appellant's counsel had previously attempted to elicit testimony from Mr. Evans as to his opinion why appellant and Higginbotham were together and to have Evans testify as to the statement which he made to the F.B.I.

While no proffer was made at the second trial as to the evidence which defense counsel hoped to develop, this court is cognizant of the extent of Evans' testimony as to his knowledge regarding Higginbotham's activities on the basis of Evans' testimony at the first trial which is a part of the record on this appeal.

The transcript of appellant's first trial reveals that at the prior proceeding defense counsel was permitted, over objection of the government, to pursue a line of questioning regarding Evans' beliefs concerning Higginbotham's involvement in drug trafficking at Milan. The apparent purpose of this inquiry was to demonstrate that Higginbotham had participated in drug use while incarcerated and that he had smuggled marijuana into the institution by secreting small amounts of the drug in his rectum. Such evidence could have provided an explanation as to Higginbotham's presence in

appellant's cell and would have provided an alternative explanation for Higginbotham's rectal damage. However, Evans' testimony was uncertain as to Higginbotham's actual conduct and the line of inquiry concluded with the following:

Q: You say you have no personal knowledge as to, well, let me ask you this: Do you have any personal knowledge as to Mr. Higginbotham bringing narcotics into the institution?

A: What do you mean, I know for sure?

The Court: Personal knowledge. Do you have any personal knowledge? Not hearsay, or rumor, scuttlebut or anything.

A: No, all I have is hearsay. Personal knowledge I don't know.

Q: You don't know personally whether Mr. Higginbotham was bringing narcotics into the institution?

A: No, sir.

Q: Yet you made the statement to the agent that you suspected he was?

A: Hearsay . . .

■ From the foregoing it is clear that the refusal of the court at appellant's second trial to permit the line of inquiry regarding Evans' beliefs about Higginbotham's activities was correct, since such testimony was not based on his personal knowledge. It is equally evident that, the court having rejected Evans' proposed testimony, defense counsel was attempting to open a different door to the same subject by inquiring of Evans whether he had ever used marijuana while incarcerated. The obvious import of that question, particularly in light of the record at the first trial and the statement which the trial judge had reviewed, was to afford a predicate for further questioning regarding drug traffic at the institution. The door to that inquiry should obviously have remained closed since, as the record reflects, Evans' testimony was plainly incompetent to establish the point defense counsel hoped to make.

■ It therefore follows that the court's refusal to permit defense counsel to proceed further with the proposed line of inquiry could not have been prejudicial error based strictly upon the propriety of the evidence itself without regard to the waiver question.

■ However, while the trial court's exclusion of Evans' testimony was on the basis of an evidentiary ruling, it does appear that even if such testimony had been admissible under the rules of evidence, Evans retained the right to invoke his Fifth Amendment privilege at the second trial. In order for a waiver of the right against self-incrimination to be effective, it must be made knowingly and voluntarily with sufficient awareness of the relevant circumstances and likely consequences, *Brady v. United States*, 397 U.S. 742, 756, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). Therefore, not having been advised of his constitutional privilege against self-incrimination at the first trial Evans' testimony thereat could not be considered a waiver obliging him to testify on the same subject matter at the second trial. *Cf., United States v. Steffen*, 103 F.Supp. 415, 417 (N.D.Cal.1951); *See also, State ex rel. Pollard v. Criminal Court of Marion County*, 329 N.E.2d 573, 589 (Indiana, 1975); *In re P. N.*, 533 P.2d 13 (Alaska, 1975). The cases cited by the appellant on this subject, *United States v. Seewald*, 450 F.2d 1159 (2nd Cir., 1971), and *Ellis v. United States*, 135 U.S.App.D.C. 35, 416 F.2d 791 (D.C.Cir., 1969), are distinguishable from the present situation in that those cases concern witnesses who had been given a specific warning of their constitutional rights prior to testifying, whereas in the present case the witness was not apprised of his constitutional privilege before testifying at the first trial. Accordingly, for the reasons herein set forth, the judgment of the District Court is affirmed.