875 F.2d 868
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Clifton TOLAND, Petitioner,
v.
Joanne BUSH, Respondent.
 No. 88-1700.
 United States Court of Appeals, Sixth Circuit.
 May 17, 1989.
 
 Before WELLFORD and RALPH B. GUY, Jr., Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Petitioner, Clifton Toland, filed an application for habeas corpus pursuant to 28 U.S.C. Sec. 2254, based upon a chief prosecution witness's invocation of her right against self-incrimination thus denying petitioner an opportunity to cross-examine. After conviction on two counts of second-degree murder, petitioner presented the issue now before us on appeal to the Michigan state courts, which rejected his contention.
 
 
 2
 Petitioner claims that a mistrial should have been declared because during his trial in the state court, he was denied his sixth amendment right of confrontation and his fifth and fourteenth amendment rights to due process of law.
 
 
 3
 Mohammed Hazime and Adel Berry were murdered outside the Pompei Lounge in Dearborn, Michigan. The testimony at trial indicated that George Vicuna, a suspect who has not been apprehended, was in the bar earlier in the evening at which time he was involved in a dispute with the two deceased. Vicuna left the bar with Katrina Perez and Louise Mendoza, both witnesses at trial, and drove to Perez's home in Detroit. Vicuna went inside Perez's home while Perez and Mendoza remained in the car. A short time thereafter, Vicuna left the home, walked down the street and conversed with petitioner and his co-defendant, Santos Burgos. The three men returned to the car, and drove to the Pompei Lounge.
 
 
 4
 Vicuna stopped the car directly behind another car already parked in front of the Pompei Lounge. A witness saw two men, whom she recognized as having been involved in the earlier fight inside the bar, get into the previously parked car.
 
 
 5
 Mendoza and Perez both testified that Vicuna left the car and walked to the driver's side of the parked car in question. Petitioner left the car and walked to the passenger side of the car. Perez saw petitioner lean into the open window on the passenger side of the parked car so that the top part of his body was in the car. Mendoza and Perez both saw petitioner then walk over to Vicuna, a gun shot was fired and the men returned to their car, at which time Perez drove the car from the scene.
 
 
 6
 In the car Perez and Mendoza testified that Vicuna stated "I got him," and petitioner stated, that "the guy tried to--did something to him so he stabbed him." Perez noted that petitioner's hand was bleeding and she saw quite a bit of blood on his hand. Berry was dead, having been shot in the arm and through the chest. Hazime died from a single stab wound in the heart.
 
 
 7
 Petitioner and Burgos' first trial resulted in a mistrial when the jury was unable to render a verdict. At the second trial in which Toland was convicted, Perez testified despite having been beaten prior to trial by a former boyfriend. She stated that her facial bruise was the result of an argument and this was a personal disagreement not involving petitioner. Her testimony, however, was inconsistent with her prior testimony, and during a side bar discussion regarding possible impeachment, it became apparent to the judge that Perez may have been more than just a person present at the scene; it appeared she knowingly drove the car away from the scene of the murders.
 
 
 8
 The prosecutor informed the court that he accordingly had not alternative but intended to charge Perez as an accomplice. The court directed that Perez be given a Miranda warning and appointed counsel. The State was not willing to grant Perez immunity, and, after consulting with appointed counsel, it was evident that Perez would refuse to testify further. There was discussion whether Perez would then be "unavailable" under Michigan rules of evidence, thus allowing her prior testimony to be introduced as evidence despite her being unavailable for any cross-examination at the second trial.
 
 
 9
 The trial judge at first indicated that a mistrial might be in order, and sought consent of counsel before declaring a mistrial. Petitioner's counsel refused, stating that he could not make this decision until he knew how the court would rule on the availability of the witness issue (whether Perez's prior testimony would be available to the jury).
 
 
 10
 The next day, when Perez formally informed the court of her refusal to testify further, the court allowed a transcript of Perez's prior testimony to be used and instructed the jury to disregard Perez's prior testimony at the second trial, involving petitioner and his actions.
 
 
 11
 Petitioner claims that the trial court should have sua sponte declared a mistrial because petitioner was prevented from cross-examining Perez. A trial court may discharge a jury only where there is a manifest necessity for the discharge. United States v. Perez, 22 U.S. [9 Wheat.] 579, 579 (1824). "The sole limitation on the authority of the court to determine that a mistrial is 'manifestly necessary' is that the judge must exercise his 'sound discretion' in determining that the ends of public justice would not be served by a continuance of the proceedings." United States v. Larry, 536 F.2d 1149, 1153 (6th Cir.), cert. denied, 429 U.S. 984 (1976); see also, Illinois v. Somerville, 410 U.S. 458, 462 (1973). The trial court should assess available curative measures in exercising this discretionary judgment. Somerville, 410 U.S. at 464; United States v. Jorn, 400 U.S. 470, 484 (1971). We find that the proceedings described, even if deemed irregularities, did not constitute reversible error. Declaration of a mistrial was not a manifest necessity.
 
 
 12
 Petitioner's sixth amendment right to confrontation was not violated by the admission of the testimony from the prior trial. It has been long accepted that the confrontation clause is not violated by the government's use of testimony given at the first trial during a retrial. Mattox v. United States, 156 U.S. 237 (1895). The direct examination and the cross-examination of the witness is read to the jury. In this case, the declarant was unavailable because she was privileged; the trials involved the same parties and issues; petitioner had ample opportunity to cross-examine during the first trial.
 
 
 13
 The Michigan rule, like the federal rule, does not consider the declarant "unavailable" if such unavailability is caused by the party presenting the evidence. Petitioner claims that because the prosecutor had procured her unavailability by threatening to charge the witness with murder, the prior testimony should not be available. Petitioner's contention is without support. There is nothing in the record to indicate that the prosecutor acted in bad faith by waiting to charge Perez until it heard information elicited by petitioner during an off-the-record, evidentiary debate. Perez's testimony was different and more favorable to the petitioner at the second trial. This, in fact, led to the side bar discussion which disclosed Perez's suspected role in the crime. Compare United States v. Larry, 536 F.2d 1149, 1152 (6th Cir.), cert. denied, 429 U.S. 984 (1976) (prosecutor's bad faith causing mistrial will create double jeopardy problems).
 
 
 14
 We also find no confrontation problem created by the inability to cross-examine the live testimony of Perez heard by the jury at the second trial. Most of this testimony was cumulative to her testimony given at the prior trial. Petitioner specifically objects to Perez's statement that she was beaten by the brother of Mendoza. Perez testified that the beating was an entirely personal matter and was unconnected to her testimony. Petitioner contends that the testimony created an inference that the beating, administered by the brother of a witness who was sympathetic to the defense, was an attempt to keep Perez from testifying or to alter the substance of her testimony. Petitioner thus asserts that cross-examination was critical to counter that inference. Review of the testimony does not support petitioner's claim and we are not persuaded that there was any prejudicial error, much less an error of constitutional proportion.
 
 
 15
 The trial court, moreover, instructed the jury not to consider the Perez testimony from the witness stand against petitioner. The jury could consider the live testimony of Perez against Santos only. We concede that the effect of such a limiting instruction under the circumstances may be doubtful. We are satisfied, nevertheless, that no prejudicial error occurred and that petitioner was not deprived of a fair trial.
 
 
 16
 If we had concluded that there was error, we would find such error "harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967). In light of Mendoza's testimony, and the unimpeached testimony regarding the events preceding the encounter, the evidence of guilt is overwhelming. See Milton v. Wainwright, 407 U.S. 371, 377 (1972).
 
 
 17
 For the reasons indicated, and for the reasons stated by Judge Robert DeMascio, we AFFIRM the decision of the district court.