IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                   :

    Plaintiff-Appellee                       :                    C.A. CASE NO.    25638

v.                                              :                    T.C. NO.    12CR751

DWAYNE L. ELLISON                               :                    (Criminal appeal from
                                                    Common Pleas Court)

    Defendant-Appellant                      :

                                                :

. . . . . . . . . .

**O P I N I O N**

Rendered on the     13th     day of      December     , 2013.

. . . . . . . . . .

KIRSTEN A. BRANDT, Atty. Reg. No. 0070162, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

LORI R. CICERO, Atty. Reg. No. 0079508, 500 E. Fifth Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    Defendant-appellant Dwayne L. Ellison appeals his conviction and sentence

for one count of felony murder, in violation of R.C. 2903.02(B), and one count of felonious

assault (deadly weapon), in violation of R.C. 2903.11(A)(2), a felony of the second degree. The preceding counts were both accompanied by firearm specifications. Ellison was also charged with one count of having a weapon while under disability (prior drug conviction), in violation of R.C. 2923.13(A)(3), a felony of the third degree. Ellison filed a timely notice of appeal with this Court on February 19, 2013.

{¶ 2} On May 9, 2011, Isaiah West and his half-brother, Dyondre Snowden, went to Gina's Party Store located in Dayton, Ohio, at 2229 Germantown Street to purchase liquor. As the two men walked into the store, they observed two women sitting in a tan Mercury Marquis just outside the store. West and Snowden stopped to talk to the women, but as they did so, a male wearing a yellow striped shirt, blue shorts, and a blue fishing hat walked by and told the two men that the women's "dude" was in the store. The male, later identified as Ellison, got into the tan Marquis with the two women and drove away. West and Snowden went inside the liquor store to make their purchase.

{¶ 3} While West and Snowden were in the liquor store, Ellison drove to a nearby grocery store where he retrieved a loaded handgun he had left with store employees earlier that day. Upon retrieving the handgun, Ellison drove back to the liquor store and went inside where he encountered West and Snowden for the second time. While observing West, Ellison noticed that he had a handgun as well. Ellison left the liquor store and went out into the parking lot. Shortly thereafter, West also walked outside and went into the parking lot. After a brief verbal exchange, Ellison pulled out his handgun and fired approximately nine shots at West. West was able to retrieve his gun and return fire before he was hit in the chest. West collapsed in the liquor store parking lot and died a short time

later.

{¶ 4} After shooting West, Ellison returned to the tan Marquis and drove back to the grocery store where he left the handgun with store employee Fahed Saleh. Saleh put the handgun under the front counter where the police discovered it the next day. Police located and arrested Ellison for the shooting of West approximately ten months later. While being interviewed by detectives, Ellison admitted that on May 9, 2011, he was at Gina's Party Store in a tan Marquis with two females. Ellison further admitted that he got into an argument with West and Snowden. Ellison, however, denied that he was armed and denied that he shot at anyone.

{¶ 5} On June 14, 2012, Ellison was indicted for one count of felony murder and one count of felonious assault, both counts accompanied by a firearm specification. Ellison was also indicted for one count of having a weapon while under disability. At his arraignment on June 19, 2012, Ellison stood mute, and the trial court entered a plea of not guilty on his behalf.

{¶ 6} On September 12, 2012, Ellison's counsel requested a continuance of the trial date. The trial court granted the continuance and moved the trial date from September 12, 2012, to December 17, 2012. After further scheduling changes, a jury was empaneled on December 14, 2012. Prior to the beginning of the jury trial on December 17, 2012, Ellison requested a mistrial in light of the shootings of multiple children and teachers at Sandy Hook Elementary School located in Newtown, Connecticut. Specifically, Ellison orally moved the court to continue the jury trial for ninety days in order to avoid any prejudice or bias resulting from the shooting. The trial court overruled Ellison's motion,

and the trial commenced.

{¶ 7}   On December 20, 2012, the jury found Ellison guilty on all counts.   On December 24, 2012, Ellison filed a written motion "nunc pro tunc" for a ninety day continuance of the trial based on the shootings at Sandy Hook Elementary School.   At the sentencing hearing on January 16, 2012, Ellison filed news articles about the Connecticut shootings and orally argued his motion for a continuance.   The trial court overruled Ellison's motion and sentenced him to an aggregate prison term of twenty-one years.

{¶ 8}   It is from this judgment that Ellison now appeals.

{¶ 9}   Initially, we note that the State argues that Ellison failed to file a timely notice of appeal pursuant to App. R. 4(A).   App. R. 4(A) provides in pertinent part:

(A) Time for appeal

A party shall file notice of appeal required by App. R. 4 within thirty days of

the later of entry of the judgment or order appealed ***.

{¶ 10}   In the instant case, Ellison filed a notice of appeal on February 19, 2013, from the judgment entry of conviction issued by the trial court on January 18, 2013.   Thirty days from January 18, 2013, fell on Sunday, February 17, 2013.   Since the thirtieth day was a Sunday and the next day was President's Day, Ellison's appeal was timely filed on February 19, 2013, the next available business day.   Thus, we conclude that Ellison's appeal was timely filed, and the State's argument in this regard is not well taken.

{¶ 11}   Ellison's first assignment of error is as follows:

{¶ 12}   "THE TRIAL COURT ERRED BY OVERRULING MR. ELLISON'S MOTION TO CONTINUE HIS TRIAL."

{¶ 13} In his first assignment, Ellison contends that the trial court abused its discretion when it denied his motion for a ninety day continuance made at the beginning of the trial. Ellison argues that the trial court should have granted the continuance "to ensure the trial would not be conducted in a prejudicial atmosphere tainted by the outrage and sorrow spawned by the tragic events at Sandy Hook Elementary on December 14, 2012."

{¶ 14} We note that although the first assignment states that it was error for the trial court to overrule his motion for a continuance, Ellison requested a mistrial rather than a continuance. We further note that a jury had already been empaneled. Specifically, Ellison was requesting that the existing jury be discharged and new one empaneled in approximately ninety days, or enough time "for his case to be tried in a less hysterical, less total immersion of sadness and appall hanging over the proceedings." The trial court overruled Ellison's motion for a mistrial, and the case proceeded to trial.

{¶ 15} Mistrials need to be declared only when the ends of justice so require, and a fair trial is no longer possible. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). The decision whether to grant a mistrial lies within the trial court's sound discretion. *Id.* As the Supreme Court of Ohio determined:

"Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. (Internal citation omitted). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were

it deciding the issue *de novo*, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 16} Normally, in determining whether the trial court properly exercised its discretion, reviewing courts look to whether (1) "there [was] a 'manifest necessity' or a 'high degree' of necessity for ordering a mistrial, or (2) 'the ends of public justice would otherwise be defeated.'" *State v. Widner*, 68 Ohio St.2d 188, 189-190, 429 N.E.2d 1065 (1981), citing *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). A "manifest necessity" for a mistrial does not mean that a mistrial was absolutely necessary or that there was no other alternative. *Arizona v. Washington*, 434 U.S. at 511. In order to exercise "sound discretion" in determining that a mistrial is necessary, the trial judge should allow the defense and prosecution to state their positions on the issue, consider their competing interests, and explore some reasonable alternatives before declaring a mistrial. *Id*. at 514-516.

{¶ 17} On the morning of December 17, 2012, immediately before opening statements and outside the hearing of the jury, Ellison made the following motion before the trial court:

> **Defense Counsel**: All right. *Judge, respectfully at this time, I would like to move for a judgment – for a mistrial in this case for reasons that have nothing to do actually with what's going on in the courtroom, but what's going on outside the courtroom.*

We have – for the purposes of the court of appeals if this motion is overruled, we are at the first day of a trial where there has been a very tragic tragedy that has occurred in the State of Connecticut that has received worldwide attention, that has caused the President of the United States to break down on television and cry. It involves a shooting incident in the State of Connecticut in which many young people and older people died. It has been covered twenty-four hours a day, seven days a week. And again speaking to the court of appeals here, you'll have to go back in your memory to remember the weekend after the tragedy. But in any event, there is nothing going on since Friday evening that does not involve the total immersion of the press, TV, cable television, regular television, twenty-four hours a day, seven days – or I'll say three days up to this point in time, but it doesn't look like it's going to let up.

In this atmosphere, where we are immersed in an aura of sadness about a gun death and requests being made by the President, members of congress for now gun control rules, changing them while this case is in fact starting, that involves a shooting – actually double shooting I would say. *But there's no way at all that we can – I think my client can get a fair trial.*

I'm reminded of the fact that I have a fiancé and she was in tears for thirty-six hours about this particular incident. And that's what called it to my attention that every place we went everybody was just – it looked like Christmas had been stolen from the people because of this particular incident.

And now we're being confronted with having to go to trial in the Christmas season, that the Court has told the jury that they may even go over through Christmas.

Again it reminds me of the Sam Shepherd case, the reversal of which came from the Southern District Court of Ohio here, but these are circumstances that I would not want to be tried in. I can't believe anybody would want to be tried in. I want the record to show that in addition to this wall to wall coverage, there's no place that anybody can go that this topic isn't the only topic, literally, that's being discussed at this point in time. And more than my fiancé are in tears about the mere discussion of the issue.

*I want the record to show the Defense is entitled to a fair trial. The Defendant, fair trial under the Sixth Amendment and the Defendant is offering to waive any statutory speedy trial rights for a period of up to ninety days in order for his case to be tried in a less hysterical, less total immersion of sadness and appall* (sic) *hanging over the proceedings. And we're in Dayton, Ohio, and this happened in Connecticut, but this literally involves the whole world from what I can see on the television.*

**The Court**: Thank you. Any response?

**The State**: Yes, Your Honor. State's understanding that no juror has come in today asking for a mistrial. No juror has come in today saying that one of their family members or friends was involved in the Connecticut shooting.

It is without a doubt a tragedy.   But the reality is that we have to try these cases.   This is when this case was scheduled and as long as no juror is asking to be let off because of it, I don't think we have any grounds for a mistrial.   Even if a juror asked, we would tap an alternate.   So it would be an extreme remedy to something that's happening in the world that the State and the Defense have no control over.   And the reality is, regardless of what's happening in Connecticut, *the Court is going to give these jurors instructions of law and they're going to be presumed to follow them.*

\*\*\*

**Defense Counsel**: The same arguments made in the Shepherd case.

**The Court**: I understand that.   I understand.   There's a difference. If I remember the Shepherd case – and I wasn't around there, but I read some of it.   That talked about the circus like atmosphere around the trial.   The trial only.   There wasn't another tragedy going somewhere else on (sic).   There was a circus going on with Mr. Shepherd's trial.   That's what got it reversed.

In this case, I would note that while Connecticut was a tragedy, *it was in Connecticut and it involved a totally different situation.   While guns are involved, there are shootings all the time.*

There was a shooting in a mall in Oregon last week.   I believe someone shot something up in California last night.   *The Connecticut tragedy involved a twenty-year old who appeared to be have some kind of problems shooting his mother in the face, then taking three guns and a high*

*powered rifle with the magazines that held thirty bullets, going to a grammar school, going to the Kindergarten killing six teachers and twenty children, six and seven-year olds.* And while I believe that is – I know it's a tragedy and I'm sorry your fiancé is taking it as hard as she is.

**Defense Counsel**: I'm not the only one, Your Honor.

**The Court**: I understand, but actually I've been out and about this weekend and I've talked to people and a lot of people haven't brought it up. People have watched it, *but I think the facts themselves are different enough. There are gun shootings every day in probably every state or almost every state in this union.*

*What happened in Connecticut was a tragedy, but it is not connected by space. In other words, it wasn't like in Greene County, thank God. There are no children involved in this case as far as I know. And so in light of that, plus this date was set, Mr. O'Brien* [defense counsel], to accommodate your schedule. Last week I wanted to try it on the tenth, you had something and because you pulled the time waiver, this is the only date we had.

*So if later on during the week if any juror brings anything up to one of my staff or you want some limiting instruction later on in the week, I would be happy to consider it, but I don't think that the factual situation as far as Connecticut and here are close enough that they would have one come on the other.*

So I understand your motion, I overrule it.   I find no basis for it under the circumstances as I laid them out.   But I note your continuing objection.

{¶ 18}   Although not argued or briefed by Ellison, we conclude that the trial court did not err when it denied Ellison's motion for a mistrial.   Other than pure speculation, Ellison provides no support from the record that the jury was in any way prejudiced towards him as a result of the Sandy Hook shootings.   Simply put, the shootings in Connecticut, while tragic, did not provide a legitimate reason for declaring a mistrial after the jury had already been empaneled.   Other than the fact that a gun was used to carry out both crimes, there were no similarities between the Sandy Hook shooting and Ellison's conduct.   Thus, the trial court's decision to overrule Ellison's motion for a mistrial was not an abuse of discretion as the record lacks any evidentiary support for the argument that he could not receive a fair trial.

{¶ 19}   Regarding Ellison's motion "nunc pro tunc" for a ninety-day continuance, the motion was filed on December 24, 2012, four days after the trial had ended.   By that time, the jury had been empaneled, the State and the defense had presented their respective cases in chief, and the jury had returned guilty verdicts as to all counts against Ellison. Except as to the sentencing, the motion for continuance was untimely.   "An appellate court must not reverse denial of a continuance unless an abuse of discretion has been demonstrated. * * *." *State v. Parks*, 69 Ohio App.3d 150, 154, 590 N.E.2d 300 (2d Dist. 1990).   Where a plaintiff failed to move for a continuance until two days after the trial had been concluded and judgment rendered, the trial court did not abuse its discretion when it denied the motion because it was untimely filed. *Schaefer v. Stephenson*, 2d Dist. Miami No.

2001-CA-46, 2002-Ohio-398.

{¶ 20}   Here, Ellison's "nunc pro tunc" motion for continuance of the trial was not only untimely, but also an improper use of the nunc pro tunc mechanism.   It is well settled that a nunc pro tunc entry can be used only to reflect what a trial court actually decided, not what it might have decided or should have decided. *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 15.   Stated differently, a nunc pro tunc entry may be used to "reflect what the trial court did decide but recorded improperly." *Id.*   An improper nunc pro tunc entry is void. *Plymouth Park Tax Services v. Papa*, 6th Dist. Lucas No. L-08-1277, 2009-Ohio-3224, ¶18, citing *Natl. Life Ins. Co. v Kohn*, 133 Ohio St. 111, 11 N.E.2d 1020 (1937), paragraph three of the syllabus.

{¶ 21}   Although Ellison entitled his motion "Written Motion Nunc Pro Tunc to Monday, December 17, 2012," it cannot serve as a substitute for an oral or written motion for continuance that was not made on December 17, 2012.   More importantly, "the power to file an entry nunc pro tunc is restricted to placing on the record a judicial action that has already been taken but was omitted due to some mechanical mistake." *State v. Arnold*, 2d Dist. Montgomery No. 22856, 2009-Ohio-3636, at ¶ 57.   Accordingly, Ellison's attempted use of the nunc pro tunc mechanism is improper because he is a defendant to a criminal action, and not the trial court correcting an earlier clerical error in a judicial action that has already been taken.

{¶ 22}   Ellison's first assignment of error is overruled.

{¶ 23}   Ellison's second and final assignment of error is as follows:

{¶ 24}   "THE TRIAL COURT ERRED BY OVERRULING MR. ELLISON'S

MOTION TO VOIR DIRE THE JURY ON ISSUES RELATING TO THE SANDY HOOK ELEMENTARY SCHOOL SHOOTING OR IN THE ALTERNATIVE, MR. ELLISON SUFFERED FROM INEFFECTIVE ASSISTANCE OF COUNSEL."

{¶ 25} In his final assignment, Ellison argues that the trial court erred when it refused to question or allow defense counsel to question the empaneled jury regarding any potential bias or prejudice arising as a result of the shootings at Sandy Hook Elementary School.

{¶ 26} Initially, we note that the record establishes that at no time did Ellison ask the court to voir dire the jurors regarding any potential bias they may have had against him due to the wholly unrelated Sandy Hook shootings. Defense counsel did not raise the issue of the trial court questioning the jury about the Sandy Hook shootings until the untimely motion to continue was filed on December 24, 2012.

{¶ 27} Because Ellison failed to make a timely request to voir dire the jury or have the trial court do so, he has waived all but plain error with regard to the issue. Crim. R. 52(B) allows a reviewing court to consider errors committed at trial, upon which appellant did not object, only if such errors affected the substantial rights of the appellant. A reviewing court should use the utmost caution in taking notice of plain error and should do so only if it is clear that, but for the error, the result in the trial court would have been different. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of syllabus. Notice of plain error should be taken only in exceptional circumstances and only to prevent a manifest miscarriage of justice. *Id*., paragraph three of syllabus.

{¶ 28} The failure of the trial court to make individual inquiry of the jury does not

of itself constitute an abuse of discretion. *U.S. v. Larry*, 536 F.2d 1149, 1153 (6th Cir.1976), citing *U.S. ex rel. Stewart v. Hewitt*, 517 F.2d 993, 996 (3rd Cir.1975). Whether to sua sponte reopen voir dire and what questions to ask or permit to be asked is largely within the discretion of the trial court. See *U.S. v. Brown*, 938 F.2d 1482, 1485 (1st Cir.1991), cert. denied, 502 U.S. 992, 112 S.Ct. 611, 116 L.Ed.2d 633 (1991). In Ohio, the scope and necessity of voir dire is within a trial court's discretion and varies with the circumstances. *State v. Mason*, 82 Ohio St.3d 144, 156, 694 N.E.2d 932 (1998).

{¶ 29} Upon review, we conclude that the trial court did not err, plainly or otherwise, when it failed to sua sponte inquire of the jury in order to ascertain whether any of them were unable to impartially decide the merits of Ellison's case. As noted by the trial court, there was no nexus or similarity between the Sandy Hook shootings and Ellison's crime.

{¶ 30} Finally, Ellison argues that his counsel was ineffective for failing to request a voir dire of the jury regarding the Sandy Hook shootings. In order to demonstrate ineffective assistance of trial counsel, a defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that the defendant was prejudiced by counsel's performance; that is, there is a reasonable probability that but for counsel's unprofessional errors, the result of the defendant's trial or proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot

form the basis of a finding of ineffective assistance of counsel." *State v. Hill*, 2d Dist. Greene No. 2004 CA 79, 2005-Ohio-3176. "When the evidence [a defendant] relies upon dehors the record that evidence must meet a threshold of cogency." *Id*. "Cogent evidence is that which is more than 'marginally significant' and advances a claim 'beyond mere hypothesis and desire for further discovery.'" *Id*.

{¶ 31} In the instant case, Ellison's failure to request an inquiry of the jury regarding Sandy Hook does not amount to ineffective assistance of counsel. It would have been well within the discretion of the trial court to deny defense counsel the opportunity to question the jury (already empaneled) about the Sandy Hook shootings. The trial court noted the lack of a nexus between Ellison's case and the shootings in Connecticut. It is highly unlikely that the trial court would have allowed defense counsel to question the jury on that topic had such a request been made. The trial court offered to provide a limiting instruction or reconsider defense counsel's motion for mistrial if one or more of the jurors brought up the Sandy Hook shootings, but none did. The record is devoid of any evidence suggesting that the jury was improperly influenced or biased against Ellison in light of the shootings at Sandy Hook Elementary. Given the strong presumption that counsel's performance constituted reasonable assistance, Ellison's trial counsel was not required to perform a futile act. *State v. Lodge*, 2d Dist. Greene No. 2004CA43, 2005-Ohio-1908. Moreover, Ellison has failed to demonstrate that there is a reasonable probability that but for his counsel's failure to request an inquiry of the jury, the result of the case would have been any different.

{¶ 32} Ellison's second assignment of error is overruled.

{¶ 33}  All of Ellison's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Kirsten A. Brandt
Lori R. Cicero
Hon. Barbara P. Gorman