**STATE of Missouri, Plaintiff–Respondent,**

v.

**Jack BRIGGS, Jr., Defendant–Appellant.**

No. 52648.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 24, 1987.

James M. Asher, Clayton, for defendant-appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Judge.

Defendant was found guilty by a jury of second-degree assault, a class C felony, and sentenced to six months in the county jail. He appeals; we affirm.

The evidence that supports the conviction was that the victim, Jerry Helmig, worked as a janitor and a dishwasher at Isabelle's Restaurant in Warrenton, Missouri. He began each work day around 10:00 p.m. Defendant's wife was a part-time night desk clerk at the adjacent Town and Country Motel. The motel lobby was in the Isabelle's Restaurant building. Defendant usually accompanied his wife to work, and the couple's 17–year–old daughter would occasionally join them there.

It had been the practice of Isabelle's Restaurant to provide complimentary coffee to law enforcement officers and other persons, but not to defendant. Helmig had reported to his superiors that defendant and the couple's daughter had been drinking the restaurant's coffee and soft drinks, and, acting on orders from the restaurant manager, he locked up the beverages. Apparently, Helmig and defendant's wife had discussed this action. Helmig testified that defendant "took exception" to being denied access to the coffee and soft drinks and, on May 18, 1985, he "came back in the kitchen,

and he told me he didn't want me saying anything to his wife. 'Don't say hi, bye, good morning, good night,' he said. 'Just don't say a m_____ f_____ thing to her.'"

In the early morning hours of May 26, 1985, defendant's wife told Helmig, "You better be looking over your shoulder. He's out to get you. You made him mad." Shortly thereafter, Helmig said, defendant "entered the kitchen shaking his fist. He said, 'I told you not to say a m_____ f_____ thing to my wife.' Then, he kicked me in the groin, and then he kicked me in the ribs." When Helmig threatened to call the sheriff, defendant "told me that he was an ex-boxer, and he'd break my m_____ f_____ neck before I could get the sheriff to Isabelle's. Then he grabbed me around the neck; and I grabbed him; and we struggled through the kitchen."

Later that day Helmig sought medical care from Rudy A. Latorre, M.D., a Warrenton physician. Dr. Latorre said Helmig complained of pain over the left side of his chest and he observed "some petechiae [1] over the bridge of the nose, the face." Dr. Latorre sent Helmig to a hospital for an x-ray of the ribs on his left side. According to Dr. Latorre, the x-ray report indicated that Helmig had "an undisplaced fracture of the tenth rib on the left side." Dr. Latorre described an "undisplaced fracture" as "a crack" and agreed that the prescribed course of treatment was rest to permit the fracture to heal. He said the normal healing time for such an injury was a maximum of four to six weeks. Helmig testified that he missed 20 days of work because of the injury and, during that period, he experienced "a lot of pain." At the time of trial in September 1986, Helmig no longer had any pain from the injury.

The state limited the information and its verdict directing instruction to the language of § 565.060.1(3), RSMo 1986, alleging that defendant "recklessly caused serious physical injury to Jerry Helmig by choking and/or striking Jerry Helmig...."

---

**1.** Minute hemorrhagic spots, of pinpoint to pinhead size, in the skin. *Stedman's Medical Dictionary* 1062 (24th ed. 1982).

In his sole point on appeal, defendant contends "the state's evidence was insufficient to prove that the victim suffered a 'serious physical injury'—a required element of assault second-degree." We disagree.

When the sufficiency of the evidence to take a case to the jury is challenged, our review is limited to determining whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged. In determining whether there was sufficient evidence, we accept as true all evidence tending to prove defendant guilty together with all reasonable inferences which support the verdict. We ignore all contrary evidence and inferences. *State v. Barnes*, 736 S.W.2d 471, 472 (Mo.App.1987).

Missouri's second-degree assault statute states in pertinent part:

1. A person commits the crime of assault in the second degree if he:

. . . .

(3) Recklessly causes serious physical injury to another person. . . .

Section 565.060, RSMo 1986.

Section 556.061(26) defines "serious physical injury" as "physical injury that creates a substantial risk of death or that causes serious disfigurement *or* protracted loss or impairment of the function of any part of the body (emphasis added)." [2] "Physical injury" is defined in § 556.061(20) as "physical pain, illness, or any impairment of physical condition."

Defendant argues that a protracted loss or impairment under § 556.061(26) must be "as serious as" an injury that creates a substantial risk of death or causes a serious disfigurement, and he cites several Missouri assault cases in support of this proposition.[3] We have read defendant's cases and conclude they do not support the statutory construction he urges us to adopt. Section 556.061(26) is written in the disjunctive, and, once a physical injury and some resultant loss or impairment are shown, the concern of the "protracted impairment" portion of the definition is with the temporal aspect of the injury. There is no minimum degree of trauma that must be inflicted to satisfy the final portion of the statutory definition.

We believe the statutory definition of "serious physical injury" is satisfied. Helmig suffered a "physical injury . . . that cause[d] . . . impairment of the function of any part of the body"; the only question is whether the impairment was "protracted." We believe that it was. "Protracted" means something short of permanent but more than of short duration; what is considered protracted depends on the circumstances. *State v. Mentola*, 691 S.W.2d 420, 422 (Mo.App.1985). In *Mentola*, six weeks was sufficient to constitute a "protracted" impairment. Here, the victim suffered a cracked rib and, as a result, he was away from his job for 20 working days and he experienced considerable pain. The evidence was sufficient to make a submissible case on the issue of whether the victim suffered a serious physical injury.

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.

2. The verdict directing instruction in this case included the statutory definition of "serious physical injury."

3. *State v. Goodman*, 490 S.W.2d 86 (Mo.1973); *State v. Hollensbe*, 720 S.W.2d 14 (Mo.App. 1986); *State v. Methfessel*, 718 S.W.2d 534 (Mo. App.1986); *State v. Quinn*, 717 S.W.2d 262 (Mo. App.1986); *State v. Davis*, 689 S.W.2d 743 (Mo.

App.1985); *State v. Maxie*, 693 S.W.2d 161 (Mo. App.1985); *State v. Mentola*, 691 S.W.2d 420 (Mo.App.1985); *State v. Seagraves*, 700 S.W.2d 95 (Mo.App.1985); *State v. Mace*, 665 S.W.2d 655 (Mo.App.1984); *State v. Gannaway*, 649 S.W.2d 235 (Mo.App.1983); and *State v. Emory*, 643 S.W.2d 24 (Mo.App.1982).