Lashonda Gayle CLIFT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2001–CA–001721–MR.

Court of Appeals of Kentucky.

May 2, 2003.

**468**

J. Nick Payne, Matthew Boyd, Lexington, KY, for appellant.

Albert B. Chandler III, Attorney General, Dennis W. Shepherd, Assistant Attorney General, Frankfort, KY, for appellee.

Before BUCKINGHAM, HUDDLESTON and JOHNSON, Judges.

*OPINION*

JOHNSON, Judge.

Lashonda Gayle Clift has appealed from a judgment entered by the Fayette Circuit Court, on July 18, 2001, which convicted her of criminal abuse in the third degree [1] and sentenced her to two days in jail and a

---

1. Kentucky Revised Statutes (KRS) 508.120.

$250.00 fine. Having concluded that the evidence presented at trial was sufficient to convict Clift, that she was not subjected to double jeopardy, and that Clift's other claims of error were not preserved for review, we affirm.

At the time of the events giving rise to the criminal charge in this case, Clift operated a day-care center at her home. On January 31, 2000, the victim's grandparents arrived at Clift's home to pick up three grandchildren, including two, twin grandsons, Jack and Zack. The grandfather noticed that 11–month–old Jack was fussier than usual, that his left arm was hanging down, and that he appeared to be gasping for breath. As the grandparents attempted to put a snow-suit on Jack, he began screaming. Jack was taken to the grandparents' home where they inspected Jack's arm, which appeared to be seriously bothering him. Jack was taken to the hospital emergency room, where doctors diagnosed him with a fracture of his upper left arm. Jack's family reported this incident to the Crimes Against Children Unit of the Lexington–Fayette County Police Department. The complaint was received by Detective Ann Gutierrez, who commenced an investigation of Clift.

At Clift's jury trial, Det. Gutierrez testified that during an interrogation Clift stated that she was likely responsible for Jack's injury. Clift allegedly told Det. Gutierrez that she had witnessed Jack trying to awaken his twin brother during his nap time, and that in her attempt to prevent him from doing so, she had grabbed Jack by his arm and yanked him away from his brother. When Clift testified at the trial, she denied that she told Det. Gutierrez that she had caused Jack's injury. Clift insisted that when she picked Jack up, she lifted him gently by both arms.

On May 8, 2000, a Fayette County grand jury returned an indictment against Clift for the offense of criminal abuse in the second degree, a Class D felony.[2] The case went to trial on November 6, 2000, but prior to the swearing of the jury, the Commonwealth informed the court that a portion of Det. Gutierrez's notes from her interrogation of Clift had not been provided during discovery. Based on the Commonwealth's concession, the trial court dismissed the jury and continued the case.

On April 17, 2001, a jury was again empanelled and this time it was sworn. However, during Det. Gutierrez's testimony, it was revealed that the Commonwealth had not disclosed to the defense the existence of a taped telephone conversation between Jack's mother and Clift.[3] The trial court sustained a defense motion for a mistrial and the case was once again continued.

A jury trial was completed on June 19, 2001, and Clift was convicted of criminal abuse in the third degree, a Class A misdemeanor. The jury recommended a sentence of two days in jail and a $250.00 fine, which the trial court imposed in a judgment entered on July 18, 2001. This appeal followed.

▬▬▬ Clift claims the evidence presented at trial was insufficient to support her conviction of criminal abuse in the third degree and that the trial court erred by denying her motion for a directed verdict of acquittal. Our standard of review of the denial of a motion for a directed verdict of acquittal is well established:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.
>
> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.[4]

KRS 508.120 sets forth the following elements for criminal abuse in the third degree:

(1) *A person is guilty of criminal abuse in the third degree when he recklessly abuses another person* or permits another person of whom he has actual custody to be abused *and thereby:*

    (a) *Causes serious physical injury;* or

    (b) Places him in a situation that may cause him serious physical injury; or

    (c) Causes torture, cruel confinement or cruel punishment;

to a person twelve (12) years of age or less, or who is physically helpless or mentally helpless [emphases added].

(2) Criminal abuse in the third degree is a Class A misdemeanor.

Specifically, Clift claims that Jack's injury was not a "serious physical injury", which is defined by KRS 500.080(15) as follows:

---

2. KRS 508.110.

3. *See* Kentucky Rules of Criminal Procedure (RCr) 7.24.

4. *Commonwealth v. Benham*, Ky., 816 S.W.2d 186, 187 (1991)(citing *Commonwealth v. Sawhill*, Ky., 660 S.W.2d 3 (1983)).

"Serious physical injury" means physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, *prolonged impairment of health*, or *prolonged loss or impairment of the function of any bodily organ* [ ] [emphases added].

The medical evidence at trial demonstrated that Jack suffered a complete fracture of the humerus, and it took approximately four to six weeks for the fracture to heal. Jack had to wear a splint and a sling for approximately four of those weeks, and his mobility was significantly impaired during this period. Thereafter, Jack resumed normal activities, and the medical testimony indicated that this type of injury to an 11–month–old child generally requires a period of between 18 and 24 months to completely heal. At the time of the trial, Jack had fully recuperated from the injury and he suffered no permanent disfigurement or lingering pain. The question before this Court is whether the evidence at trial was sufficient to induce a reasonable jury to believe beyond a reasonable doubt that Jack's injury constituted a "serious physical injury." In its brief the Commonwealth fails to identify which section of the definition of "serious physical injury" is applicable to Jack's injury; but during its closing argument, the Commonwealth argued that Jack's physical injury created "prolonged impairment of health" and "prolonged loss or impairment of the function of any bodily organ."

*Souder v. Commonwealth*,[5] is the only Kentucky case which addressed the question of how serious an injury would have to be for it to constitute a serious physical injury.[6] In *Souder*, our Supreme Court reversed a conviction for assault in the first degree because the Commonwealth had failed to present sufficient evidence that the victim's injuries met the definition of a "serious physical injury." Souder had been accused of sexually and physically abusing his girlfriend's 2 1/2 year old daughter. The evidence at trial showed that the child had "bruising and tearing in both the vaginal and anal areas[;]" "burns in and about the mouth" which may have been caused by "a cigarette, or a cigarette lighter[;]" "multiple areas of substantial bruising about her body[;]" and "a badly swollen arm." The Supreme Court stated that "[a]ll of the physical injuries proved to be relatively minor, and were successfully treated by the emergency room[s] ... at the various hospitals[,]" and "[n]one has required subsequent treatment, and there is no indication of any permanent physical injury." While the Supreme Court recognized the "hideous nature" of such acts, it held that these injuries did not meet the definition of "serious physical injury" under KRS 500.080(15).[7]

There have been numerous cases from other jurisdictions which have addressed the specific issue before us.[8] "Courts addressing the question whether a single type of injury involving broken bones con-

5. Ky., 719 S.W.2d 730 (1986).

6. *Souder* only discussed the definition of "serious physical injury" in the context of "a substantial risk of death," but we must assume that our Supreme Court also held by implication that the evidence was also insufficient to establish "prolonged impairment of health" or "prolonged loss or impairment of the function of any bodily organ." The Commonwealth cites *Johnson v. Commonwealth*, Ky.App., 926 S.W.2d 463, 465 (1996), but in

*Johnson* this Court held that "[t]he injuries inflicted on this baby leave no doubt that broken bones, head injuries, and fractured ribs are injuries which created a substantial risk of death[,]" which is not alleged herein.

7. *Id.* at 731–32.

8. Tracy A. Bateman, J.D., Annotation, *Sufficiency of Bodily Injury to Support Charge of Aggravated Assault*, 5 A.L.R.5th 243 (1992).

stituted sufficient bodily injury to support aggravated assault have generally found them sufficient under the facts or evidence presented at trial where the victim suffered a broken ankle, arm, back, cheek bone, collarbone, finger, hand, jaw, leg, nose, rib, shoulder, and skull." [9] In *State v. Fitzgerald*,[10] the Court of Appeals of Missouri affirmed a mother's conviction for assault in the second degree for breaking her 11–month–old daughter's arm. The statute in question included in its definition for "serious physical injury" a physical injury that causes "protracted loss or impairment of the function of any part of the body." The Court stated that "protracted"[11] "means something short of permanent, but more than of short duration[,]" "[and][w]hat is considered 'protracted' depends on the circumstances."[12] The Court noted that the infant "was hospitalized for three days and wore a plaster splint for four weeks[;]" and then stated that "[w]hile there is no set formula regarding what amount of time constitutes 'protracted,' we find that four weeks in the life of an infant is enough to constitute 'less than permanent but more than of short duration.' "[13]

The Court of Appeals of Missouri in *Briggs, infra,* had held that there was sufficient evidence to support a jury's verdict of guilty in a conviction for assault in the second degree, when the victim, who had suffered a beating at the hands of Briggs, had suffered "an undisplaced fracture of the tenth rib on the left side."[14] The victim's doctor stated that the "prescribed course of treatment was rest to permit the fracture to heal[,]" and "[h]e said the normal healing time for such an injury was a maximum of four to six weeks."[15] The victim "testified that he missed 20 days of work because of the injury and, during that period, he experienced 'a lot of pain.' "[16] The Court determined that "[t]he evidence was sufficient to make a submissible case on the issue of whether the victim suffered a serious physical injury."[17]

This Court in *Rowe v. Commonwealth*,[18] reversed a conviction for assault in the second degree and remanded the case for a new trial with the jury instructions to include both assault in the second degree and assault in the fourth degree. This Court held that the question of whether the injury created "prolonged impairment of health" "was a proper question for the jury to determine." Likewise, in the case *sub judice* reasonable people could differ as to whether the injury suffered by Jack caused "prolonged impairment of health" or "prolonged loss or impairment of the

---

9. *Id.* at 276.

10. Mo.App., 778 S.W.2d 689 (1989).

11. "Protracted" is defined as "prolonged in time or space." Merriam Webster's Collegiate Dictionary (10th ed.1999).

12. *Id.* at 692 (citing *State v. Simmons,* Mo. App., 751 S.W.2d 85, 90 (1988)).

13. *Id.* (citing *State v. Briggs,* Mo.App., 740 S.W.2d 399, 401 (1987); and *State v. Mentola,* Mo.App., 691 S.W.2d 420, 422 (1985)).

14. *Briggs,* 740 S.W.2d at 400.

15. *Id.*

16. *Id.*

17. *Id.* at 401. (The definition for "serious physical injury" once again required the physical injury to cause "protracted loss or impairment of the function of any part of the body." *See also People v. Mohammed,* N.Y.App.Div., 162 A.D.2d 367, 557 N.Y.S.2d 35 (1990), where the Court held that the victim had suffered "protracted impairment of health" "based upon the evidence that she suffered a fractured humerus requiring several weeks of immobilization.")

18. Ky.App., 50 S.W.3d 216, 221 (2001).

function of any bodily organ." Accordingly, we hold that a reasonable juror could find that the significant impairment of the use of an 11–month–old child's arm for a four-week period constitutes either "prolonged impairment of health" or "prolonged loss or impairment of the function of [a] bodily organ" and thus constitutes a "serious physical injury" under KRS 500.080(15).

Clift also claims that her retrial should have been barred by her constitutional protection not to be subjected to double jeopardy.[19] Clift claims the Commonwealth acted in bad faith in causing two mistrials. As noted previously, it took three separate attempts to try and convict Clift. After the first mistrial, the trial court ordered the Commonwealth to divulge all evidence concerning any incriminating statements Clift may have made during the investigation. After turning over notes concerning Det. Gutierrez's interrogation of Clift, the Commonwealth stated that it believed it was now in compliance with the trial court's discovery orders. However, during the presentation of the Commonwealth's evidence at the second trial, it was discovered that Clift had not been informed about the tape recorded telephone conversation between her and the victim's mother. Clift argues that the Commonwealth's failure to disclose this evidence, after the trial court's specific ruling that all such evidence must be disclosed, constituted bad faith on the part of the Commonwealth. Clift argues that the Commonwealth's actions gave her no choice but to move for a mistrial, and that

her subsequent retrial should have been barred on double jeopardy grounds.

In general, a party who moves for a mistrial may not thereafter invoke the bar of double jeopardy to prevent retrial.[20] Thus, when the party who moved for a mistrial below seeks to prevent her retrial upon double jeopardy grounds, she must show that the conduct giving rise to the order of mistrial was precipitated by bad faith, overreaching or some other fundamentally unfair action of the prosecutor or the court.[21] In the case *sub judice*, the trial court found that no prosecutorial misconduct had occurred. The discovery omission was apparently due to miscommunication between the Commonwealth's Attorney's office and Det. Gutierrez. The trial court found that no fundamental unfairness resulted from the retrial of the case. From our review of the record, we are unable to say that the trial court's factual determinations were clearly erroneous or that its ruling constituted an abuse of discretion.[22] Therefore, we affirm the trial court's ruling that Clift's retrial was not barred on double jeopardy grounds.

Clift also claims the trial court erred by "not granting a mistrial when [the] Commonwealth's witness made reference to [an] inadmissible polygraph test in her testimony." Clift misrepresents the record when she states in her brief that the "Judge overruled [the] motion for a mistrial and then gave an admonition to the jury to disregard any mention of the test and [that] they [sic] were not admissible." The record clearly shows that

---

19. Fifth Amendment to the Constitution of the United States and Section 13 of the Kentucky Constitution.

20. *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).

21. *Tinsley v. Jackson*, Ky., 771 S.W.2d 331, 332 (1989)(citing *United States v. Larry*, 536 F.2d 1149 (6th Cir.1976); *United States v. Love*, 597 F.2d 81 (6th Cir.1979); and *Tamme v. Commonwealth*, Ky., 759 S.W.2d 51 (1988)).

22. *Tinsley*, 771 S.W.2d at 332.

counsel never asked the trial court for a mistrial. Accordingly, this issue was not preserved for our review and will not be discussed any further.

Similarly, Clift's claim that Det. Gutierrez "was allowed to present hearsay testimony when she read from another officer[']s notes in her testimony" was not preserved for our review. The record shows that defense counsel objected to the witness reading from her notes, but had not objected to her using the notes to refresh her memory. After this concern was addressed by the trial court, the witness continued to testify without any further objection. Accordingly, the alleged error was not preserved for appellate review.

For the foregoing reasons, the judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.