# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: JUNE 16, 2016
NOT TO BE PUBLISHED

## Supreme Court of Kentucky

2015-SC-000444-MR

DATE 7-7-16 Emir Grownup D.C

GARY PENNINGTON 　　　　　　　　　　　　　　　　　APPELLANT

ON APPEAL FROM LYON CIRCUIT COURT
V. 　　　　　HONORABLE CLARENCE A. WOODALL, III, JUDGE
NO. 14-CR-00025

COMMONWEALTH OF KENTUCKY 　　　　　　　　　　APPELLEE

### MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A jury convicted Gary Pennington of first-degree assault based on a finding that the victim suffered "serious physical injury." Pennington now appeals as a matter of right, arguing that the trial court erred when it denied his request for the jury to be instructed on second-degree assault under the theory that the victim only suffered "physical injury." Having reviewed the record, the arguments of the parties, and the law, we affirm.

### I. BACKGROUND.

On April 12, 2014, Pennington was an inmate at the Kentucky State Penitentiary serving as a kitchen worker. Following lunch service that day, Pennington went to the kitchen stockroom to help a contract kitchen worker, Joann Smith, refill salt and pepper shakers. For unknown reasons, Pennington attacked Ms. Smith, repeatedly hitting her on the head with the

handle from a meat slicer. Pennington only stopped after another inmate and a correctional officer restrained him.

Pennington was tried by a jury for first-degree assault on July 16, 2015. Ms. Smith and several other witnesses testified regarding the injuries she sustained as a result of Pennington's assault. The paramedic who first responded to the penitentiary testified that, following his initial assessment of Ms. Smith, he called for a helicopter to take her to a Level 1 Trauma Center. The paramedic also testified that he could see bone through the lacerations on Ms. Smith's head.

Dr. Christopher Haughn, a trauma surgeon, treated Ms. Smith immediately following the assault. Dr. Haughn testified that Ms. Smith sustained a significant orbital fracture; nine very deep lacerations mostly to her head, one of which required dressing changes while it healed because the tissue was too damaged to suture; and a concussion. According to Dr. Haughn, Ms. Smith did not suffer any bleeding in the brain, infection, or wound healing problems, and she was discharged from the hospital within one day of being admitted.

Dr. Michael Nicholas, a clinical neuropsychologist, has treated Ms. Smith for ongoing neurological injuries. Dr. Nicholas testified that Ms. Smith first sought treatment in August 2014 for problems with attention, concentration, memory, slurred speech, and amnesia. Dr. Nicholas diagnosed Ms. Smith with a traumatic brain injury and continued to treat her at the time of trial, 15 months after the assault.

Ms. Smith testified that her eye socket was "blown;" her cheek and jaw were broken; her C-4 and C-5 vertebra were compressed, causing numbness in her arms; and, because of problems with her vision, she had to have surgery on her eyes. Ms. Smith admitted that her eyesight had improved following surgery; however, she stated that ongoing symptoms made it impossible for her to read and drive. Furthermore, Ms. Smith testified that she had not been able to return to work as a result of the assault and that she expected to continue receiving treatment for her ongoing symptoms.

Pennington did not call any witnesses, and he chose not to testify. The defense tendered a second-degree assault jury instruction under the theory that Ms. Smith had only suffered "physical injury" as opposed to "serious physical injury" as called for under first-degree assault. The Commonwealth objected, and, after hearing arguments from the parties, the trial court did not include the proposed second-degree assault instruction, finding there was not sufficient evidence in the record to support that instruction.

The jury found Pennington guilty of first-degree assault, and Pennington appealed to this Court pursuant to section 110(2)(b) of the Kentucky Constitution.

## II. STANDARD OF REVIEW.

We review a trial court's ruling on the exclusion of a lesser included offense instruction for abuse of discretion. *Ratliff v. Commonwealth*, 194 S.W.3d 258, 274 (Ky. 2006), *as modified* (July 28, 2006). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable,

3

unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

## III.  ANALYSIS.

Pennington argues that he was denied due process when the trial court refused to instruct the jury on the lesser included offense of second-degree assault as set forth in Kentucky Revised Statute (KRS) 508.020.

"It shall be the duty of the court to instruct the jury in writing on the law of the case[.]" Rule of Criminal Procedure (RCr) 9.54(1). Implicit in this rule, the instructions must be "complete and the defendant has a right to have every issue of fact raised by the evidence and material to his defense submitted to the jury on proper instructions." *Hayes v. Commonwealth*, 870 S.W.2d 786, 788 (Ky.1993). "A defendant is entitled to an instruction on any lawful defense which he has. Although a lesser included offense is not a defense within the technical meaning of those terms as used in the penal code, it is, in fact and principle, a defense against the higher charge." *Slaven v. Commonwealth*, 962 S.W.2d 845, 856 (Ky. 1997). "[A]n instruction on a lesser included offense is required if the evidence would permit the jury to rationally find the defendant not guilty of the primary offense, but guilty of the lesser offense." *Thomas v. Commonwealth*, 170 S.W.3d 343, 349 (Ky. 2005). However, a trial court has no duty to instruct on a theory not supported by the evidence. *Payne v. Commonwealth*, 656 S.W.2d 719, 721 (Ky. 1983).

At issue in this case is the degree of injury Ms. Smith suffered as a result of Pennington's assault.  In pertinent part, a person is guilty of first-degree

4

assault when he causes "serious physical injury," whereas he is guilty of second-degree assault when he causes "physical injury." KRS 508.010(1)(a); KRS508.020(1)(b). Therefore, the question is whether the evidence would have permitted the jury to rationally find that Ms. Smith suffered only a "physical injury," rather than a "serious physical injury." KRS 500.080(15) defines "serious physical injury" as "physical injury which creates a substantial risk of death, or which causes serious and prolonged disfigurement, prolonged impairment of health, or prolonged loss or impairment of the function of any bodily organ[.]" "Physical injury" requires only "substantial physical pain or any impairment of physical condition[.]" KRS 500.080(13).

In *Parson v. Commonwealth*, 144 S.W.3d 775, 787 (Ky. 2004), we held a "prolonged impairment of health" occurred when a victim suffered from headaches, ongoing neck pain, lack of range of motion caused by muscle spasms, upper back pain, and arm numbness of five months' duration. Likewise in *Clift v. Commonwealth*, 105 S.W.3d 467, 470-472 (Ky. App. 2003), the Court of Appeals held that a reasonable juror could find that an 11-month-old suffered a "prolonged impairment of health" or a "prolonged loss or impairment of the function of [a] bodily organ" when he lost use of his arm for four weeks due to a broken humerus.

Applying those standards to the evidence in the record, we are convinced that the trial court did not abuse its discretion because a rational jury could only have found that Ms. Smith suffered "serious physical injury" as a result of Pennington's assault. As noted above, Dr. Nicholas testified that he diagnosed

5

Ms. Smith with a traumatic brain injury after she presented with problems with attention, concentration, memory, slurred speech, and amnesia. Furthermore, he had treated Ms. Smith for nearly a year and continued to do so at the time of trial. Ms. Smith testified that her C-4 and C-5 vertebra were compressed causing ongoing numbness in her arms, a condition that would require treatment in the future. Dr. Haughn testified that Ms. Smith suffered a significant orbital fracture, and Ms. Smith testified that, despite having undergone surgery, her eyesight had not fully returned, leaving her unable to drive or read. Such symptoms and diagnoses are more than sufficient to establish a prolonged impairment of health and a prolonged impairment of the functioning of several bodily organs, i.e. the brain and the nervous and visual systems. Thus, the evidence clearly established that Ms. Smith suffered a "serious physical injury," and no jury could have rationally concluded that Ms. Smith suffered only a "physical injury."

Pennington also argues that the trial court usurped the role of the jury by weighing the evidence to determine if a second-degree assault instruction was warranted. For support, Pennington argues that Ms. Smith's testimony as to her injuries, which the trial court relied on, was not credible. He notes that Ms. Smith testified that she was pursuing a civil lawsuit against Kentucky State Penitentiary, which provided an incentive for her to exaggerate her injuries.

We agree that witness credibility is within the province of the jury. *Ratliff*, 194 S.W.3d at 269. However, in addition to Ms. Smith's testimony, the

6

Commonwealth presented unrefuted testimony from the paramedic who first treated Ms. Smith and from her treating physicians detailing the severity and prolonged nature of her injuries. Thus, even if we believed that Ms. Smith's testimony lacked credibility, there was overwhelming medical evidence that she suffered serious physical injuries. Furthermore, Pennington presented no medical evidence to the contrary and has not pointed to any medical evidence to support his contention that Ms. Smith suffered only physical injuries. Accordingly, the trial court did not abuse its discretion in refusing to instruct the jury on second-degree assault because such an instruction was not supported by the evidence.

## IV.    CONCLUSION.

For the reasons stated above, Pennington's conviction is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Molly Mattingly
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General